MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2017 ME 209
Docket:       And-17-151
Submitted
  On Briefs:  September 27, 2017
Decided:      October 24, 2017

Panel:        SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, and HUMPHREY, JJ.

IN RE DANIKA B. et al.

PER CURIAM

[¶1]  The mother of Danika B., Victor B., and Daytona C. appeals from a judgment of the District Court (Lewiston, *Dow, J.*) terminating her parental rights to the children pursuant to 22 M.R.S. § 4055(1)(A)(1)(a) and (B)(2)(a), (b)(i)-(ii) (2016).   The mother argues that the court's finding that the Department of Health and Human Services did not make reasonable efforts to "shape and monitor" counseling for her compels us to conclude that the termination of her parental rights was improper.  We affirm the judgment.

I.  BACKGROUND

[¶2]  The court based its decision to terminate the mother's parental rights on the following factual findings, which are supported by the record:

> [T]he Department has made reasonable efforts to rehabilitate and reunify the family, and has made reasonable efforts to identify and pursue an alternative permanency plan. These efforts include rehabilitation and reunification planning, family team meetings, safety assessments, random drug screening

for the mother, referral to domestic violence education and services for the mother, supervised visitation for the mother, ICPC study for kinship placement, mental health and parental assessment for the mother, medical and mental health care for the children, referral to case management for the mother, [and] foster care for the children. While the Department referred the mother to mental health counseling, the Department failed to take reasonable steps to shape and monitor the quality of that counseling, and such failure makes the counseling fall short of qualifying as a reasonable effort by DHHS.

. . . .

. . . Child protection services has been involved with [the mother and] these children . . . over and over since 2003. Despite repeated interventions, the chronic problems in the household are exposure to domestic violence, squalid and unsafe living conditions, housing instability, and inadequate supervision and care of children.

. . . .

The relationship with [the father] has, in fact, been violent, with both [parents] as perpetrators, and the children as witnesses. [The mother] has not shown accountability for her violence or changed the belief system that underpins recurrent domestic violence. The Court adopts [the evaluator's] finding that, "[o]ne of the biggest obstacles for [the mother] is her lack of insight and recognition regarding the problems in her life and the role she plays in them." [The mother] has chosen to have contact with [the father] throughout the pendency of this case.

. . . .

[The mother] succeeded in attending and completing certain services. In May of 2016, she successfully completed DBT group. She attended a parenting class. Since June of 2016, she has

engaged in counseling . . . and she attended the majority of scheduled case management sessions . . . . These are good things.

However, desirable results from these services remain elusive. The Court notes, for example, that [the mother's] completion of DBT class preceded by only a few weeks her emotional escalation to aggressiveness toward a visit supervisor at a supervised visit on May 31, 2016. Police were called and visits were suspended for a time. It was the kind of escalation that DBT is intended to prevent.

As for counseling, the Court was gravely disappointed with the testimony of [the counselor] that she was not 100 percent sure she had seen [the evaluator's] parental assessment of [the mother]. She certainly has not been using that assessment as a guide to focus the efforts in counseling. [The counselor] identified the goals of her counseling of [the mother] to be addressing depression, PTSD, and reunification with the children. Despite months of weekly counseling sessions, [the counselor] was not aware that [the mother] had been a perpetrator of domestic violence against [the father], not aware of the extent to which [the mother] has continued to see [the father], and not aware that [the mother] had been convicted of three counts of endangering the welfare of a child. The trauma that [the mother and the counselor] seem to be processing together seems to be the difficult experience of having the children removed by DHHS rather than [the mother's] reported history as a victim of abuse and neglect by her parents and abuse by her romantic partners. The Court finds that the counseling . . . , in terms of its effect on alleviating jeopardy, has been a missed opportunity thus far.

. . . .

As for case management, the goals were to find a primary care physician, arrange medication management, and obtain suitable housing for [the mother]. While the first two goals have been met, [the mother] has yet to obtain suitable housing. At the time of trial, [the mother] had a room in the home of friends,

unsuitable for reunification with the children. She was on the wait list for subsidized housing at different locations. She was in the process of applying for Social Security Disability benefits which would improve her financial stability. At certain times during the pendency of the case, [the mother] lived in her vehicle, in a motel with her brother, with another friend, with [the father] (in violation of court orders) and with [the children's paternal grandfather].

The Court adopts [the guardian ad litem's] assessment of [the mother's] fitness for parenting and her efforts to alleviate jeopardy:

> "[The mother] has tried her best to engage in the reunification process, which has been difficult given her challenging life with limited resources. [The mother] wants to do well. [The evaluator] noted in her parental assessment that numerous interventions have been attempted over the years with [the mother] with little result. While [the mother] did not fully engage with the rehabilitation and reunification process in 2015, she has regularly attended the visits since February 2016, and has regularly engaged with a new case manager and therapist since June 2016. [She] has yet to develop insight into how she contributed to the reasons [the Department] intervened, and what she can do differently. [ . . . ] [The mother] has shown some good parenting skills during the visits, but the overall impression is that she cannot safely parent and manage [the children], whether it is one or three children at a time, unless she has help. Since June of 2015, [she] has struggled with her relationship with [the father] and domestic violence, safe and stable housing, mental health treatment, medication management, and regularly communicating with [the Department]."

Based on the foregoing, the Court finds by clear and convincing evidence that [the mother] is unfit due to her inability to protect the children from jeopardy or take responsibility for them in a time reasonably calculated to meet their needs.

The Court turns now to the issue of the children's best interest. All of the findings above also go to best interest.

The children's lives in the care of [the mother] were chaotic. Their negative experiences in [the mother's] care range from trauma (witnessing serious assaults between their parents), to neglect ([the mother] was convicted [of] three counts of endangering the welfare of a child). The children all have special needs that require a good deal of attention from their custodians. They have all been making progress in their services.

[The twins] have just turned five years old. [The eldest daughter] is six. The children have been in foster care since June 4, 2015. According to the GAL report, the three children need stability, consistency, structure, and intensive supervision. They absolutely need permanency.

The GAL believes that termination of the mother's rights as to [the three children] is in the children's best interest. The evidence compels the Court to agree strongly. . . .

(Citations omitted.)

## II.  DISCUSSION

[¶3]  Although the mother argues that the judgment terminating her parental rights should be vacated because the court found that the Department failed to take reasonable steps to shape and monitor the quality

6

of her counseling, the record does not support that interpretation of the court's findings.

[¶4]  Here, the court noted only that the counselor had chosen to address issues that, ultimately, would not assist the mother in alleviating jeopardy.  Although the court found that the Department failed to take reasonable steps to shape and monitor the mother's counseling, the court specifically found that the Department did make reasonable efforts to reunify, including rehabilitation and reunification planning, family team meetings, referral to domestic violence education and services, supervised visitation, an ICPC study for kinship placement, mental health assessment and treatment, and referral to case management services.  *See In re Daniel H.*, 2017 ME 89, ¶ 16, 160 A.3d 1182.  Even if the Department had not made reasonable efforts to reunify, which is not the case here, that failure *alone* does not preclude a termination of parental rights.  *See In re Thomas D.*, 2004 ME 104, ¶ 28, 854 A.2d 195.  There is competent evidence in the record to support the court's findings of unfitness and that termination is in the children's best interests.

The entry is:

Judgment affirmed.

Nathaniel Seth Levy, Esq., Brunswick, for appellant mother

Janet T. Mills, Attorney General, and Meghan Szylvian, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee Department of Health and Human Services

Lewiston District Court docket number PC-2015-37
FOR CLERK REFERENCE ONLY