MAINE SUPREME JUDICIAL COURT                                       Reporter of Decisions
Decision:      2017 ME 221
Docket:        Som-17-255
Submitted
  On Briefs:  November 29, 2017
Decided:      December 7, 2017

Panel:         SAUFLEY, C.J., and ALEXANDER, MEAD, JABAR, HJELM, and HUMPHREY, JJ.


IN RE AIDEN J. et al.


PER CURIAM

[¶1]  The mother of Logan J., Aiden J., Marissa J., Belladonna J., and Jessie B. appeals from a judgment of the District Court (Skowhegan, *Nale, J.*) terminating her parental rights to her five children pursuant to 22 M.R.S. § 4055(1)(A)(1)(a) and (B)(2)(a), (b)(i)-(ii) (2016).[1]  She challenges the sufficiency of the evidence to support both the court's finding of parental unfitness and its determination that termination is in the children's best interests.  The mother also argues that the Department of Health and Human Services failed to comply with 22 M.R.S § 4041 (2016) because it did not provide the mother with Home Community Treatment (HCT) services.  We affirm the judgment.

---

[1]  The children's father consented to the termination of his parental rights and is not a party to this appeal.

2

[¶2]  Based on competent evidence in the record, the court found by clear and convincing evidence that the mother (1) is unable to protect the children from jeopardy and these circumstances are unlikely to change within a time which is reasonably calculated to meet the children's needs; and (2) is unable to take responsibility for the children within a time that is reasonably calculated to meet the children's needs.  *See* 22 M.R.S. § 4055(1)(B)(2)(b)(i)-(ii).  The court also found that termination of the mother's parental rights is in the children's best interests.  *See* 22 M.R.S. § 4055(1)(B)(2)(a).  We review factual findings supporting the unfitness determination for clear error and apply the same standard to the factual findings supporting the best interest determination, although we review the court's ultimate conclusion that termination is in the children's best interests for an abuse of discretion.  *See In re M.B.*, 2013 ME 46, ¶ 37, 65 A.3d 1260.

[¶3]  The court based its determinations on the following findings of fact:

> There is . . . no question that [the mother] has made some progress participating in the services that were designed to help her address her mental-health issues. . . .  However, the progress that [the mother] has made in reunifying with her children over the past seventeen-to-twenty-two months is insufficient to meet these five children's needs, as explained by [the psychologist] in his Court Ordered Diagnostic Evaluation and expanded upon in his testimony.  The Court accepts [the psychologist's] conclusions

and assigns a great weight and credibility to his report and testimony. Based on [the psychologist's] evaluation and testimony, the Court finds that [the mother] is not yet close to alleviating jeopardy.

The critical issue, for [the mother], is her ability to protect the children and take responsibility for them. The original jeopardy with regard to all five children centered around [the mother's] inability to provide the children adequate supervision and care. With regard to this, the issue of [the mother's] relative parental fitness, the Court is most persuaded by [the psychologist]. His written evaluation, in conjunction with his testimony, demonstrated to the Court the troublingly high probability that the progress she has made, such as it is, would collapse if these children were returned to her custody.

At the outset, [the psychologist] was asked to assess whether [the mother] is "capable of providing for the needs of these five children, including two [Logan and Aiden] which have been specifically identified with special needs." He answered simply: "By herself, no." Having heard from all the children's foster parents, and the counselors for Logan and Aiden, the Court is familiar with these five children's particular needs. The Court agrees with [the psychologist] and finds that, by herself, [the mother] is simply not capable of providing for [the children].

. . . .

Based on the complete picture of the evidence before it, but particularly [the psychologist's] report and testimony, the Court finds that it is essentially a full-time task for [the mother] to tend to her own high needs. The Court recognizes that, in answering "[b]y herself, no," [the psychologist] raised the possibility that, with the assistance of a capable adult, it is conceivable that [the mother] could find some way to meet these five children's needs someday. However, looking at all the evidence, and in particular [the mother's husband's] own live testimony, the Court is unable to find that [the mother's] husband is a person who is capable of

4

helping her sufficiently shorten the substantial amount of time it would take her to alleviate the persistent jeopardy that was first found to exist in September of 2015.

[The mother] finds herself in tragic circumstances. In her testimony, she asked for acknowledgment that where she finds herself today is not entirely the result of choices that she has made. The Court does acknowledge that. She has been abused in her life. That is not her fault.

However, as evidenced by her own testimony, [the mother] still does not have an adequate understanding as to what effect her own mental-health challenges have already had—and are highly likely to continue having—on her children. What she must do to protect and take responsibility for these five children, she cannot do in a timely manner[,] if she can do it at all.

After twenty-two months out of their mother's care for Logan, Aiden, Marissa, and Belladonna, and seventeen months out of her mother's care for Jessie, and with no clear path forward for the mother to alleviate jeopardy any time soon, the law demands permanency for these children so that they can be happy, healthy, safe, and productive. [The psychologist], in his written report, informed this Court that, after studying the mother, he "does not have any idea of how long treatment would have to take place for her to be able to parent these children."

[¶4] Given these findings and the court's other specific findings of fact, all of which are supported by competent evidence in the record, the court did not err in its finding of parental unfitness, nor did it err or abuse its discretion in determining that termination of the mother's parental rights, with a permanency plan of adoption, is in the children's best interests. *See*

*In re Logan M.*, 2017 ME 23, ¶ 3, 155 A.3d 430; *In re Thomas H.*, 2005 ME 123, ¶¶ 16-17, 889 A.2d 297.

[¶5]   The mother contends that the court's findings are nonetheless unsupported by the record because the Department failed to comply with 22 M.R.S. § 4041, specifically by failing to provide her with HCT.[2]   To the contrary, the record shows that the Department developed a reunification plan that clearly outlined the safety goals and services in which the mother needed to engage, offered the mother numerous reunification services,[3] and made a good faith effort to cooperate with and seek the participation of the mother throughout these proceedings.   *See generally* 22 M.R.S. § 4041. Despite the Department's reunification efforts, the mother was still unsuccessful in reunifying with the children.

The entry is:

Judgment affirmed.

---

[2]   The mother requested HCT but was never offered this service.  The testimony from the Department in this case indicates that this service was not recommended for the mother and her children because the mother lacked consistency in her participation in visitation with her children and she was still struggling with her mental health stability.  Regardless, "[e]ven if the Department had not made reasonable efforts to reunify, which is not the case here, that failure *alone* does not preclude a termination of parental rights."  *In re Danika B.*, 2017 ME 209, ¶ 4, --- A.3d ---.

[3]   These services included, among others, transportation services, mental health counseling, medication management, domestic violence counseling, supervised visitation with the children, family team meetings, and the aid of a number of caseworkers.

Richard W. McCarthy, Jr., Esq., Pittsfield, for appellant mother

Janet T. Mills, Attorney General, and Meghan Szylvian, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee Department of Health and Human Services

Skowhegan District Court docket numbers PC-2015-38 and PC-2015-72
FOR CLERK REFERENCE ONLY