MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2019 ME 70
Docket:      Som-18-489
Submitted
 On Briefs:  April 24, 2019
Decided:     May 14, 2019

Panel:       SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

IN RE CHILDREN OF JESSICA D.

PER CURIAM

[¶1]  Jessica D. appeals from a judgment entered by the District Court (Skowhegan, *Benson, J.*) pursuant to 22 M.R.S. § 4055(1)(B)(2)(a), (b)(i)-(ii) (2018) terminating her parental rights to her three children.  She challenges the court's determination that she is parentally unfit and that termination of her parental rights is in the best interests of the children.  We affirm the judgment.

## I.  BACKGROUND

[¶2]  The Department of Health and Human Services initiated child protection proceedings as to the mother's three children on May 17, 2017, alleging chronic substance abuse and significant neglect.  *See* 22 M.R.S. § 4032 (2018).  The court issued a preliminary protection order, placing the children in the Department's custody.  *See* 22 M.R.S. § 4034 (2018).  On August 30, 2017, the court entered a jeopardy order, finding that the children were "in

circumstances of jeopardy in the care of their mother . . . due to her substance abuse and past neglect . . . . [And the mother is] unable to remain clean and sober and safely care for her children." *See* 22 M.R.S. § 4035 (2018). The court's jeopardy order specifically found that the mother failed to engage and follow through consistently with the medical and mental health treatment of the children, all of whom have high needs. The court also outlined the services and steps the mother needed to take to ameliorate the jeopardy, including engaging in dual-diagnosis counseling and medication management; obtaining a court-ordered diagnostic evaluation (CODE); taking parenting classes; maintaining a safe, stable, and sanitary home free of domestic violence, drugs, and alcohol; and refraining from criminal conduct.

[¶3] Despite the mother's participation in some of these services, on June 26, 2018, the Department petitioned the District Court to terminate the mother's parental rights.[1] *See* 22 M.R.S. § 4055(1)(B)(2)(a), (b)(i)-(ii). At the termination hearing on September 20, 2018, the court heard testimony from a physician who examined two of the children, a child psychologist, the guardian ad litem, the Department social worker, the children's current foster parent, the

---

[1] The father consented to the termination of his parental rights on July 24, 2018, and he is therefore not a party to his appeal. *See* 22 M.R.S. § 4055(1)(B)(1) (2018).

mother's clinical counselor, and the mother.  On November 8, 2018, the court entered an order terminating the mother's parental rights, finding, by clear and convincing evidence, that the mother is unable to protect the children from jeopardy and unable to take responsibility for the children within a time reasonably calculated to meet their needs, and that termination of her parental rights is in the best interests of the children.  *See id.*  The court based its decision on the following findings, which are supported by competent record evidence.

> While [the mother] has been engaged in services throughout the pendency of this child protection proceeding she has not made any measurable progress in reunifying with her children.
>
> [The mother] has historically struggled with maintaining safe and stable housing for herself that is suitable for reunification with the [children] and that struggle is ongoing. . . .  [A] DHHS permanency social worker . . . went to the [mother's] home shortly after the mother had moved in and noted safety concerns including gaps between the walls and the exterior of the home and use of a homemade woodstove.
>
> [The mother's] substance abuse and poorly managed mental health led to numerous Department involvement[s] dating back to 2013.  On more than one occasion the children were safety planned out of [the mother's] care because her substance abuse and mental health deteriorated, and the children were neglected.  When residing with [the mother] the children were hungry so frequently at school that reports were made to the Department and plans were made by the school to provide the children with extra food during the school day.  On three occasions, [the mother] was not present to pick the children up from the bus stop and school officials weren't able to reach her for lengthy periods of time.  Every time the children were planned out of [the mother's] care their

behaviors improved drastically, their academic performance improve[d], services [were] re-established, and their medical appointments [were] met. [The mother] has historically been able to achieve sobriety, engage in mental health treatment and stabilize[,] allowing the children to be returned to her care. When the children are returned to her care[,] however, she has stopped mental health treatment, her attendance in her services has also stopped and she has relapsed on illicit substances.

[The mother] has no insight into her substance abuse issues, and, at the hearing, she downplayed the impact it had on her children. She testified that she didn't use [drugs] when her children were home and ignored the obvious neglect the children were subjected to. [She] disputes using [c]ocaine despite her [positive] March 2018 drug screen . . . and the [c]ourt concludes that that [test] result was the result of a relapse. Despite the approximate 5 months of sobriety, [her] longstanding and cyclical struggle with substance abuse reveals she is only at the beginning of her recovery.

[The mother] also has little or no insight into the extent her mental health has impacted her ability to parent and led to the neglect previously found by the [c]ourt in this matter.

. . . [The mother] is minimally aware of her children's many medical, behavioral and educational needs and services. [Her] plan is apparently for the children to do all services while at school and to ensure that they don't have services that fall on the same day [as] her services do.

. . . [She] was unable to clearly articulate how she would effectively manage the [children's] behaviors other than to state [that it's] not easy to do during visits.

[The mother] does not enforce any rules about personal space with the [children] and she does not act as a parent during the visits but rather a peer of the children. After visits with [the

mother,] the [children] can be very difficult to redirect, and they struggle to keep their hands to themselves.

. . . [The mother] has been unable to demonstrate an ability to meet and maintain her own mental health, substance abuse recovery, and living situation in addition to the mental health, medical, dental, vision and educational needs of the [children]. The Department has provided [her] with [numerous programs and services]. Despite all these services, she is unable to demonstrate [an] ability to achieve and maintain a level of stability and sobriety while juggling the high needs of her children.

. . . .

[The foster parent] has implemented a structure, routine, and consistency in the children's schedule that has allowed them to feel safe and secure. The children are well bonded with [their foster parent] and she is committed to providing them with the care, supervision and love they require. . . . [C]hanging the kids' routines would be drastic and would cause huge regression in their behavior . . . .

. . . .

. . . While it is abundantly clear to the court that the mother loves her children very much, the clock has run out and after 15 months in foster care it is time for [the children] to have the permanency they deserve.

## II. DISCUSSION

[¶4] The mother argues on appeal that the record fails to support the court's finding that she is parentally unfit and that termination of her parental rights are in the children's best interests. We review the court's factual findings supporting its determination of parental unfitness and best interests of the

6

children for clear error, and review its ultimate conclusion that termination is in the best interests of the children for an abuse of discretion, "viewing the facts, and the weight to be given them, through the trial court's lens, and giving the court's judgment substantial deference." *In re Mathew H.*, 2017 ME 151, ¶ 2, 167 A.3d 561 (quotation marks omitted).

[¶5] Contrary to the mother's argument that she has sufficiently addressed her mental health and substance abuse issues, there is competent evidence that the mother has tested positive for illegal substances numerous times during the pendency of this case and consistently abuses marijuana. There is also competent evidence to support the court's finding that the mother, who testified that she puts her mental health treatment on the "back-burner" to care for her children, historically ceases substance abuse and mental health counseling services once the children are returned to her care.

[¶6] The mother also argues that the Department failed to make certain parenting services available, which she argues are essential to her success. Although it appears that the Department did not provide certain parenting counseling services to her, there is no evidence that those additional services would have made any difference. Moreover, even if the Department failed to make reasonable efforts at reunification—which is not the case here—that

failure is merely a factor in the unfitness analysis and does not preclude termination of parental rights. *In re Danika B.*, 2017 ME 209, ¶ 4, 172 A.3d 464.

[¶7] Here, the court's finding of unfitness was not based on the mother's failure to engage in parenting classes but rather in her persistent inability to demonstrate stability and sobriety while the children are in her care. Although the Department did not provide certain parenting services to her, the record evidence, viewed as a whole, is sufficient to support the court's findings of unfitness by clear and convincing evidence. *See In re Child of Christine M.*, 2018 ME 133, ¶ 7, 194 A.3d 390; *In re Charles G.* 2001 ME 3, ¶ 7, 763 A.2d 1163.

[¶8] As to the best interests of the children, permanency is the "central tenet" of the Child and Family Services and Child Protection Act. *See In re Thomas H.*, 2005 ME 123, ¶23, 889 A.2d 297; 22 M.R.S. §§ 4001 to 4099-H (2018). When a child has been placed in foster care for fifteen of the most recent twenty-two months, the Department must, with limited exceptions, file a petition to terminate the parents' rights. 22 M.R.S. § 4052(2-A)(A) (2018); *see In re B.P.*, 2015 ME 139, ¶ 19, 126 A.3d 713 ("Once a child has been placed in foster care, a statutory clock begins ticking. In setting that clock, the Legislature has spoken in terms of days and months, rather than in years, as might better

fit an adult's timeframe for permanent change." (alterations omitted) (quotation marks omitted)).

[¶9]   The children entered foster care in May 2017; the termination hearing was held sixteen months later, in September 2018.  After living apart for some time, the three children were reunited in March 2018 and have since lived with a single foster parent.  Based upon these facts, all of which are supported by competent record evidence, the court did not err in finding, by clear and convincing evidence, that the mother is unable to take responsibility and unable to protect the children from jeopardy, that these circumstances are unlikely to change within a time reasonably calculated to meet the children's needs, and that termination of her parental rights are in the best interests of the children, nor did the court abuse its discretion in its ultimate decision to terminate her parental rights.  *See* 22 M.R.S. § 4055(1)(B)(2)(a), (b)(i)-(ii); *In re Thomas D.*, 2004 ME 104, ¶ 21, 854 A.2d 195.

The entry is:

Judgment affirmed.

Wayne Doane, Esq., Exeter, for appellant mother

Aaron M. Frey, Attorney General, and Meghan Szylvian, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee Department of Health and Human Services

Skowhegan District Court docket number PC-2017-26
FOR CLERK REFERENCE ONLY