MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2019 ME 107
Docket:        Ken-18-470
Submitted
  On Briefs:   June 26, 2019
Decided:       July 9, 2019

Panel:         SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, HJELM, and HUMPHREY, JJ.

IN RE CHILD OF SHAINA T.


PER CURIAM

[¶1]  Shaina T. appeals from a judgment of the District Court (Waterville, *Montgomery, J.*) terminating her parental rights to her child and the court's denial of her motion for relief from that judgment pursuant to M.R. Civ. P. 60(b)(6).  She challenges the court's parental unfitness and best interest determinations and contends that the court erred in denying her motion for relief based on her claim of ineffective assistance of counsel.  We affirm the judgment.

## I.  CASE HISTORY

[¶2]  The following facts are drawn from the court's findings, which are supported by the evidence, and from the procedural record.  *See In re Children of Corey W.*, 2019 ME 4, ¶ 2, 199 A.3d 683.

[¶3]  In January 2016, the Department of Health and Human Services was notified by a Waterville police detective that the child at issue in this case—who

was two years old at the time—was residing with her mother in an apartment in Waterville where police found drugs, drug paraphernalia, and several intoxicated adults while investigating a burglary. The Department also discovered that the mother was advertising herself on a website often used to facilitate prostitution. Although the mother initially refused to cooperate with the Department, she ultimately agreed to participate in the safety assessment process and signed a safety plan. When the mother violated that safety plan in February 2016, the Department filed a petition for a child protection and preliminary protection order. The court (*Stanfill, J.*) issued a preliminary protection order at that time, granting custody of the child to the Department, which placed her with her maternal grandparents.

[¶4] In May 2016, when the mother's drug screen results were satisfactory and the Department determined that she had safe and stable housing, the court (*Matthews, J.*) entered a jeopardy order returning the child to her custody with conditions. The child remained in the mother's care until the mother was arrested for selling drugs in September 2016. The child was again placed with her maternal grandparents; in October 2016, the court (*Stanfill, J.*) entered a judicial review order granting custody of the child directly to the grandparents.

[¶5] The mother eventually pleaded guilty to three counts of unlawful trafficking of scheduled drugs and two counts of violation of a condition of release. She was sentenced to five years of incarceration, with all but eighteen months suspended, and three years of probation. The mother remained incarcerated until January 2018.

[¶6] Visits between the mother and the child began again in February 2018. Around that time, the child began to cry more often, withdraw from her friends at school, and cling to adults.

[¶7] In March 2018, the Department filed a petition to terminate the mother's parental rights; a one-day hearing was held on the petition in September 2018. Following the hearing, the court (*Montgomery, J.*) entered a judgment terminating the mother's parental rights. Based on clear and convincing evidence in the record, the court determined that the mother was unable or unwilling to protect the child from jeopardy or take responsibility for the child, and that those circumstances were unlikely to change within a time reasonably calculated to meet the child's needs. *See* 22 M.R.S. § 4055(1)(B)(2)(b)(i)-(ii) (2018). The court also concluded that termination of the mother's parental rights was in the child's best interest. *See* 22 M.R.S. § 4055(1)(B)(2)(a) (2018).

4

[¶8]   In support of those determinations, the court made the following findings of fact, all of which are supported by competent record evidence.

> Upon her release from jail, [the mother] engaged in therapy . . . .   Therapy was initially scheduled on a weekly basis, but it appears [the mother] failed to attend sessions between February 28, 2018 and April 11, 2018.   Thereafter, the sessions were scheduled for every other week.   Her major focus in therapy has been on dealing with the stress caused by DHHS'[s] custody of [the child].   When questioned about whether she thought her hanging around drug dealers, drug users, and prostitutes while [the child] was in her custody was problematic, she seemed unable to recognize the risks, again showing no sense of insight or accountability.
>
> Since her release from prison, all of [the mother's] drug test results have been negative.   She has also secured stable housing and attended all but two visits with [the child].   Maintaining that she has done everything requested by DHHS, [the mother] contends that she is ready for [the child] to be returned to her.
>
> [The mother] is obviously very bright, intelligent, and articulate.   Her history of engagement in criminal activity and her familiarity with others who have been regularly engaged in criminal activity, however, is sufficiently extensive to have given her a thorough knowledge about drug dealing, prostitution, and other criminal activity.   Nevertheless, she currently claims to have had no knowledge of any of the following events/activities prior to her incarceration:
>
> - her former boyfriend's drug dealing or drug using;
>
> - the content of the white powder she bagged at her former boyfriend's request;
>
> - the presence of drugs in her car (which led to her arrest in September 2016);

- heroin dealing by her friend . . . (who she knew to be a drug dealer), on Mt. [Desert] Island when [the mother] gave her a ride there; and

- the reasons her current boyfriend was arrested for disorderly conduct.

The court found these denials to be sufficiently unbelievable to negatively impact the credibility of her testimony overall.

Additionally, [the mother] demonstrated a surprisingly cavalier attitude about the risk posed to [the child] when exposing her to people regularly engaged in criminal activity. . . . Consequently, the court finds [the mother's] assurances that she has learned from her experiences and will no longer expose [the child] to unsafe individuals to be unreliable.

. . . .

[The child] is in severe need of permanency. She has lived with her grandmother now for just over two years, and this placement is her second one. She has done very well in her placement and is strongly bonded with [the grandmother]. [The grandmother] provides her with a regular routine on which she can rely and from which she can continue to gain a sense of security and safety. She is also shielded there from the risks of violence, arrest, and recklessness that are often a regular feature of the lives of individuals engaged in criminal activities.

[The child's] need for permanency . . . is immediate. This little girl has waited now for over two years to be in a safe, stable, secure environment where she is loved and cared for and that she knows will be permanent.

The court recognizes that since her release from prison, [the mother] has for the most part complied with the reunification requirements. But as previously noted, despite her involvement in services, [the mother's] lack of the sense of self-accountability and

6

insight remain as obstacles to a successful amelioration of jeopardy to her daughter. The clear and convincing evidence in this case shows that while [the mother] has attempted to engage in necessary services and has shown a willingness to continue, her progress is simply too little, too late when the time reasonably calculated to meet the child's needs is measured from the child's perspective. In short, the court finds by clear and convincing evidence that the first two statutory definitions of parental unfitness are established with respect to [the mother].

. . . .

. . . [T]he court finds that establishing a permanent home as quickly as possible is undoubtedly in [the child's] best interest. As [the mother] cannot immediately provide the necessary permanency, the court finds that termination of her parental rights is in [the child's] best interest. Continuing on a permanent basis to live with [the grandmother], to whom she is strongly bonded, is similarly in [the child's] best interest.

[¶9] The mother timely appealed from the judgment terminating her parental rights. *See* 22 M.R.S. § 4006 (2018); M.R. App. 2B(c)(1).

[¶10] In December 2018, the mother—represented by new counsel—filed a motion for relief from that judgment pursuant to M.R. Civ. P. 60(b)(6) and an accompanying affidavit claiming that she had received ineffective assistance of counsel at the termination hearing. We granted leave for the trial court to act, and it held an evidentiary hearing on the mother's motion on February 6, 2019. At the outset of the hearing, the mother argued that she should be allowed to present testimony from three individuals whom she

asserted her former attorney should have called as witnesses at her termination hearing; the mother, however, had not submitted affidavits from those individuals in support of her Rule 60(b)(6) motion. After hearing argument from the mother and the State, the court limited the testimony at the hearing to that of the mother and her former attorney. At the conclusion of the hearing, the court denied the mother's Rule 60(b)(6) motion; on February 14, 2019, the court entered a written order memorializing that decision.

[¶11] The mother timely appealed from the court's denial of her motion.[1] We ordered that the appeal be consolidated with her earlier appeal from the termination judgment.

## II. LEGAL ANALYSIS

### A. Unfitness and Best Interest Determinations

[¶12] The mother argues that the record fails to support the court's finding that she is parentally unfit and that termination of her parental rights is in the child's best interest. "We review the court's factual findings supporting

---

[1] The parental rights of the child's father were terminated in a separate order and he does not participate in this appeal. The child's maternal grandparents are parties to the appeal because they currently have custody of the child; the grandparents have filed a letter adopting the State's brief by reference. *See* M.R. App. P. 7A(h). The maternal grandmother has legal guardianship of the mother's two other children, but they are not the subject of this child protection action.

its determination of parental unfitness and best interests of the child[] for clear error, and review its ultimate conclusion that termination is in the best interest of the child[] for an abuse of discretion . . . ." *In re Children of Jessica D.*, 2019 ME 70, ¶ 4, --- A.3d ---.

[¶13]  Contrary to the mother's arguments, there is competent evidence in the record to support the court's finding, by clear and convincing evidence, that she is unable or unwilling to protect the child from jeopardy or take responsibility for the child in a time reasonably calculated to meet the child's needs.  *See* 22 M.R.S. § 4055(1)(B)(2)(b)(i)-(ii); *In re Thomas D.*, 2004 ME 104, ¶ 21, 854 A.2d 195.  The mother is incorrect in her contention that the court erred by basing its unfitness determination, in part, on her lack of accountability and insight regarding her past actions and the risks of exposing the child to unsafe individuals because her reunification plan did not include any requirement that she address those issues.  Rather, the record contains a reunification and rehabilitation plan signed by the mother that identifies one of her goals as "keep[ing] unsafe individuals away from [the child]" and lists her counseling goals as "judgment - safe people[,] stability (housing)[,] understanding personal safety/security[, and the] impact of others."  The court based its findings regarding the mother's lack of insight and accountability on

competent evidence showing that despite the mother's engagement in services, she remained unable to demonstrate a sufficient understanding of these issues and how they affect the child.

[¶14] Furthermore, the court did not commit clear error or abuse its discretion in determining that termination of the mother's parental rights was in the child's best interest. *See* 22 M.R.S. § 4055(1)(B)(2)(a); *In re Thomas H.*, 2005 ME 123, ¶¶ 16-17, 889 A.2d 297. At the time of the termination hearing, the child had been out of the mother's custody for approximately two years and had been removed from her care twice. Although the mother indicated that she was willing to continue to work toward reunification, the court's determination correctly recognized that permanency is a central tenet of Maine's Child and Family Services and Child Protection Act, 22 M.R.S. §§ 4001 to 4099-H (2018), *see In re Thomas H.*, 2005 ME 123, ¶ 23, 889 A.2d 297, and that one of the purposes of the act is to "[e]liminate the need for children to wait unreasonable periods of time for their parents to correct the conditions which prevent their return to the family," 22 M.R.S. § 4050(2) (2018).

B.     Ineffective Assistance of Counsel

[¶15] The mother argues that the court abused its discretion by denying her motion for relief from judgment based on her claim of ineffective assistance

of counsel. *See* M.R. Civ. P. 60(b)(6). She also contends that the court erred when it restricted the testimony at the evidentiary hearing on her motion to that of herself and her former attorney. The mother asserts that the court denied her due process by not allowing her to present testimony from three individuals whom she maintains her former attorney should have called to testify at her termination hearing because she failed to include affidavits from those individuals in support of her Rule 60(b)(6) motion.

[¶16] When a parent files a Rule 60(b)(6) motion alleging ineffective assistance of counsel, she must submit therewith her own affidavit "stating, with specificity, the basis for the claim" along with "affidavits from any individuals the parent asserts should have been called as witnesses during the termination hearing." *In re M.P.*, 2015 ME 138, ¶ 21, 126 A.3d 718; *see also In re Aliyah M.*, 2016 ME 106, ¶ 8, 144 A.3d 50 ("[T]he parent must . . . submit affidavits executed by any other person with information that the parent wants the court to consider."). In her Rule 60(b)(6) motion and accompanying affidavit, the only basis the mother stated with specificity in support of her claim of ineffective assistance of counsel was that her former attorney should have, but did not, call three individuals to testify at her termination hearing. Because the mother failed to include affidavits from those three individuals, the

court could have denied that aspect of her motion without a hearing. *See In re M.P.*, 2015 ME 138, ¶ 21, 126 A.3d 718; *see also In re Alexandria C.*, 2016 ME 182, ¶ 17, 152 A.3d 617.

[¶17]  Even if the mother had complied with the affidavit requirement, the court would not have been obligated to hold a hearing on her Rule 60(b)(6) motion. *See In re David H.*, 2009 ME 131, ¶ 34, 985 A.2d 490 ("[A] court is not required to hold an evidentiary hearing, even when a party asserts that such a hearing is necessary, to receive evidence in support of a Rule 60(b) motion."). The trial court has broad discretion in determining "what process is necessary to meaningfully assess a parent's claim while balancing the State's important interest in expeditiously establishing permanent plans for children. Such a determination will necessarily call upon a trial court to tailor the process to the facts and circumstances of each case." *In re M.P.*, 2015 ME 138, ¶ 36, 126 A.3d 718 (citation omitted).  In the circumstances of this case, where the mother did not comply with the procedure we outlined in *In re M.P.* but the court nevertheless granted her request for an evidentiary hearing on her motion, we discern no due process violation in the court's decision to limit the scope of that hearing to the testimony of the mother and her former attorney.

12

[¶18]  Turning to the court's denial of the mother's motion, "we review the factual findings underlying ineffectiveness claims for clear error" and the "court's ultimate denial of a Rule 60(b) motion . . . for an abuse of discretion." *In re Alexandria C.*, 2016 ME 182, ¶ 19, 152 A.3d 617.  The mother had "the burden to show that (1) [her] counsel's performance was deficient . . . and (2) the deficient performance prejudiced [her] interests at stake in the termination proceeding to the extent that the trial cannot be relied on as having produced a just result."  *In re Child of Rebecca J.*, 2019 ME 76, ¶ 23, --- A.3d ---. The evidence developed at the hearing on the mother's motion supports the court's determination that she did not meet this burden, and therefore the court did not abuse its discretion by denying the mother's Rule 60(b)(6) motion.

The entry is:

Judgment affirmed.

---

Kristina Dougherty, Esq., Chester & Vestal, P.A., Portland, for appellant mother

Aaron M. Frey, Attorney General, and Meghan Szylvian, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee Department of Health and Human Services

Mary Kellett Gray, Esq., Brooklin, for appellees maternal grandparents