2014 ME 99

**In re B.C.**

**Docket No. Yor–13–505.**

Supreme Judicial Court of Maine.

Submitted on Briefs: July 1, 2014.

Decided: July 31, 2014.

---

**2.** We also note with approval the Department's assignment of a Russian-speaking caseworker to this case.

Jack Hunt, Esq., Kennebunk, for appellant Mother.

Janet T. Mills, Attorney General, and Nora Sosnoff, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee Department of Health and Human Services.

Panel: SAUFLEY, C.J., and ALEXANDER, SILVER, MEAD, and GORMAN, JJ.

ALEXANDER, J.

[¶ 1] The mother of B.C. appeals from a judgment entered in the District Court (Biddeford, *Foster, J.*) terminating her parental rights pursuant to 22 M.R.S. § 4055 (2013). The mother contends that the court exceeded the bounds of its statutory authority pursuant to 22 M.R.S. § 4035(3) (2013) by imposing in the dispositional portion of the jeopardy order certain "conditions" that the mother was required to meet before the court would consider her to have alleviated the circumstances that led to the jeopardy finding. The mother asserts that those conditions effectively relieved the Department of Health and Human Services of its burden to prove the elements for termination of her parental rights by clear and convincing evidence, 22 M.R.S. § 4055(1)(B)(2), and improperly shifted the burden of proof to her.[1] We affirm the judgment.

---

1. The mother also contends that the court erred in rejecting her testimony, and the corroborating testimony of her expert witness, to the effect that the mother's boyfriend, suspected of gravely injuring B.C., was emotionally and verbally abusive and threatening toward the mother; the mother continued her relationship with the boy-

## I. CASE HISTORY

[¶ 2] The following facts are essentially undisputed. The mother of B.C. has a history of drug abuse, and B.C. was born "drug affected" in September 2011. The mother returned to work when the child was three weeks old, and she relied on numerous caregivers, including her boyfriend, to watch the infant while she was at work and, on several occasions, overnight.

[¶ 3] In November 2011, when the child was just weeks old, the mother left him alone with her boyfriend overnight. During the night, the baby allegedly fell off the bed. The mother took B.C. for medical treatment the next day, and it was discovered that the child had numerous extremely serious injuries: multiple bruises to many parts of his body, including around his eye; a "buckle fracture" to his right leg that required a cast; and a "huge" skull fracture extending from one ear to the other, as revealed in a CT scan. These were inflicted, not accidental, injuries.

[¶ 4] As the court found in the jeopardy order and as supported by the record, the CT scan revealed not only the skull fracture, but also diminished brain tissue in the frontal portion of the child's brain, indicative of a prior traumatic head injury. That head injury most likely occurred several weeks before the mother took the child for medical treatment. A doctor specializing in child abuse reportedly informed the mother and the Department that he was convinced that the child had been physically abused on at least two occasions.

[¶ 5] The Department petitioned for a child protection order and was granted a preliminary protection order on November 15, 2011. The Department was later granted leave to amend its petition for a child protection order to (1) allege the existence of an aggravating factor on the grounds that the mother subjected the child to "treatment that is heinous or abhorrent to society," and (2) seek an order relieving it from an obligation to provide reunification services to the mother. *See* 22 M.R.S. §§ 4002(1–B)(A)(1), 4036(1)(G–2), 4041(2)(A–2)(1) (2013).

[¶ 6] Although B.C. had been in the care of too many people, including the mother, to identify who was responsible for the multiple incidents of abuse, the boyfriend was suspected of causing at least some of the child's injuries. Despite this, the mother denied that the boyfriend could have inflicted the injuries and continued her relationship with him. She also failed to acknowledge that her son's injuries were not accidental, and she did not attempt to determine who injured the child or to ensure that he would not be subject to further abuse.

[¶ 7] However, in an abrupt "change of heart," the mother testified under oath at the April 2012 jeopardy hearing that she had stopped seeing the boyfriend in January 2012. The court was skeptical of the professed break-up and indicated that the only apparent explanation for the break-up, if it had occurred at all, was the im-

friend because of that threatening and controlling relationship; but the mother has since developed the skills needed to avoid controlling and abusive domestic relationships that could result in unsafe situations for B.C. Contrary to the mother's contention, the court did not err. Determinations of the mother's and her expert's credibility and of the weight to give their testimony was the sole province of the court as the fact-finder, and the court was free to credit or reject their testimony in part or in whole. *See Hutz v. Alden,* 2011 ME 27, ¶ 14, 12 A.3d 1174; *In re Tabitha R.,* 2003 ME 76, ¶ 6, 827 A.2d 830. We do not discuss this issue further.

pending jeopardy hearing.[2] The mother also tested positive for drug use in January 2012, despite her participation in substance abuse counseling.

[¶ 8] The court entered an order in May 2012 finding jeopardy. Despite the Department's arguments, the court declined to find the existence of an aggravating factor. *See* 22 M.R.S. § 4041(2)(A–2)(1). However, because the Department had expressed concerns about crafting a meaningful reunification plan with the mother, the court provided a blueprint for the Department's reunification plan in the dispositional portion of the jeopardy order. The court advised, among other things, that

> [i]t will take careful work to define what changes must occur for [the mother] to alleviate jeopardy to her son. The Court would find it insufficient to simply say that [she] must continue to attend counseling, visit on a regular basis, and refrain from the use of illegal drugs. There must be a detailed, honest exploration by [the mother] of the events surrounding her son's multiple injuries in an attempt to identify the sources of risk. In addition, [the mother] must examine her relationship with [the child] and why she was so willing to leave him in the care of so many others at such a young age.... And she must actually invest in her substance abuse treatment. The Court will not be satisfied by a last-minute, on the witness stand conversion. [The mother's] work and actions must be consistent, long-term, and sincere. Absent some certainty that the child's abuser has been identified and the risk he or she presents has been contained,

[the mother] faces the very real possibility that she will never regain custody of her son.

The mother did not appeal from the jeopardy finding. In July 2012, the Department devised a reunification plan that incorporated the elements set forth in the jeopardy order, and the mother agreed to the plan.

[¶ 9] After the jeopardy hearing, the mother consistently told the Department that she now held the boyfriend responsible for the child's injuries and adamantly assured the Department, her substance abuse/mental health counselor, the guardian ad litem, and others that she had had no contact with the boyfriend since January 2012. Subsequent developments, however, demonstrated that the mother had been lying to everyone, including to the court at the jeopardy hearing.

[¶ 10] When faced with mounting evidence that she had continued her relationship with the boyfriend long after she claimed to have terminated contact, the mother finally admitted in early 2013 that she had continued her relationship with the boyfriend at least to September 2012, approximately ten months after B.C. was severely injured and removed from her custody, and that she had been in contact with the boyfriend as recently as late December 2012. She also claimed, for the first time, that she had continued her relationship with him and continued to lie about that fact, in part because the boyfriend had become increasingly controlling and threatening after the summer of 2012, but that she had not recognized, until shortly before she disclosed the truth, that

---

**2.** It later turned out that the court correctly assessed the mother's testimony at the jeopardy hearing. The mother subsequently testified at the hearing on the petition to terminate her parental rights that, even though she testified at the April 2012 jeopardy hearing that she thought the boyfriend was responsible for injuring the child, she had not actually thought that at the time; she testified as she had at the jeopardy hearing because she thought "that's what [she] needed to say to be able to keep [the child]."

she was the victim of his emotional and mental abuse.

[¶ 11] The child has lived with a foster family since infancy. He has thrived, but he has special needs and continues to experience certain challenges, which may persist for years or for life. The child's foster parents provide the structured, calm environment that the child needs, the child has bonded with them, and they would like to adopt him.

[¶ 12] The Department petitioned for the termination of the mother's parental rights in March 2013. After an evidentiary hearing, the court entered a judgment terminating the mother's parental rights in October 2013. The court found the mother unfit on the ground that she is unwilling or unable to protect the child from jeopardy and that these circumstances are unlikely to change within a time reasonably calculated to meet the child's needs and found that termination of the mother's rights is in the child's best interest. This timely appeal followed. *See* 22 M.R.S. § 4006 (2013).

## II. LEGAL ANALYSIS

[¶ 13] Contrary to the mother's contentions on appeal, we first conclude that the court did not err or abuse its discretion in crafting the dispositional portion of the jeopardy order. *See* 22 M.R.S. §§ 4035(3), 4036(1), (2) (2013); *In re M.B.*, 2013 ME 46, ¶ 32, 65 A.3d 1260 (stating that we review questions of law, including statutory interpretation, de novo); *In re Daniel T.*, 544 A.2d 1302, 1303–04 (Me.1988).

 [¶ 14] The court is authorized by statute to order, after finding jeopardy, "any disposition under section 4036" which may include "[t]hat … the parents … accept treatment or services to ameliorate

the circumstances related to the jeopardy." 22 M.R.S. §§ 4035(3), 4036(1)(C). The court is also authorized to impose "[o]ther specific conditions governing custody," which is a "grant of a general residual authority to add conditions other than those specifically enumerated [in section 4036(1)]." 22 M.R.S. § 4036(1)(H); *In re Daniel T.*, 544 A.2d at 1304 (stating also that the Legislature, recognizing that it "could not foresee every eventuality," "articulated the principles to guide the District Court and then assigned it discretion to devise a protection order that would best fulfill the statutory purposes").

[¶ 15] The Department is tasked with developing the rehabilitation and reunification plan pursuant to 22 M.R.S. § 4041(1–A)(A)(1) (2013), and it ultimately did so in this case. The dispositional portion of the court's jeopardy order explicitly states several problems and circumstances that it anticipated the mother would need to address in the course of "accept[ing] treatment or services to ameliorate the circumstances related to the jeopardy." 22 M.R.S. § 4036(1)(C); *see also* 22 M.R.S. § 4036(2). Nothing in statute or case law precludes a court from including explicit directives concerning the amelioration of jeopardy in its orders. *See* 22 M.R.S. § 4036(1), (2); *In re Daniel T.*, 544 A.2d at 1303–04 (holding that, though the statute does not explicitly so provide, because the court has the authority to devise a protection order to best fulfill the purposes of the child protection statute, the court may order that the Department not change the placement of a child in its custody without permission of the court, even though the statute otherwise assigns the responsibility of child placement to the Department and not to the courts).[3] We further conclude

---

**3.** The court's providing guidance to the Department in developing a reunification plan in

this case is consistent with the statutory scheme. *See, e.g.*, 22 M.R.S. § 4041(1–

that, based on the evidence available to the jeopardy court, the court's guidance in the dispositional portion of the jeopardy order, later incorporated into the reunification plan and agreed to by the mother, was justified.

[¶ 16] Additionally, we discern no alteration in or shifting of the burden of proof at trial as a result of the court's disposition order or otherwise. *See In re Scott S.*, 2001 ME 114, ¶ 14, 775 A.2d 1144. The court explicitly stated that it made its findings, to the applicable standard of clear and convincing evidence, and found parental unfitness based on its determination that the mother is unwilling or unable to protect the child from jeopardy and that these circumstances are unlikely to change in a time reasonably calculated to meet the child's needs. *See id.* There is no indication that the court failed to apply the appropriate standard or that it erroneously shifted the burden of proof from the De-

partment to the mother at the hearing on the petition to terminate her parental rights. Because there is competent evidence in the record to support the court's finding, by clear and convincing evidence, of parental unfitness, and the court likewise did not err or abuse its discretion in determining, by clear and convincing evidence, that termination of the mother's parental rights is in the child's best interest, *see* 22 M.R.S. § 4055(1)(B)(2); *In re M.S.*, 2014 ME 54, ¶¶ 13–15, 90 A.3d 443, we affirm the judgment.

The entry is:

Judgment affirmed.

A)(A)(4) (2013) (authorizing the court to aid the parties in resolving disagreements over proposed changes to a rehabilitation and reunification plan through its case management system and stating that nothing in that subparagraph may "be construed to limit the court's authority to manage and control any cases within the court"); 22 M.R.S.

§ 4041(1–A)(C) (2013) (authorizing the court to review a preliminary rehabilitation and reunification plan established before entry of a jeopardy order); *see also In re Alivia B.*, 2010 ME 112, ¶ 10, 8 A.3d 625 ("In construing a statute, the provision at issue must be considered within the broader context of the entire statutory scheme.").