MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:       2019 ME 106
Docket:         Oxf-19-79
Submitted
  On Briefs:    June 26, 2019
Decided:        July 9, 2019

Panel:          SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, HJELM, and HUMPHREY, JJ.


IN RE CHILDREN OF MATTHEW G.


PER CURIAM

[¶1]  Matthew G. appeals from a judgment of the District Court (Rumford, *Carlson, J.*) terminating his parental rights to his two children pursuant to 22 M.R.S. § 4055(1)(B)(2)(a), (b)(i)-(ii) (2018).  He argues that the court erred by relying solely on his incarcerated status to support its findings of parental unfitness and claims that he received ineffective assistance of counsel at the termination hearing.[1]  We affirm the judgment.

[¶2]  The Department of Health and Human Services initiated child protection proceedings as to the father's two children in March 2018 while the father was incarcerated, roughly one month after the children's mother died from an apparent drug overdose.  *See* 22 M.R.S. § 4032 (2018).  The court

---

[1]  Following the court's judgment, the father filed a motion for additional findings of fact and conclusions of law pursuant to M.R. Civ. P. 52(b).  The court (*Carlson, J.*) summarily denied the father's motion.  The father does not challenge the court's denial of his Rule 52(b) motion.

(*Nale, J.*) issued preliminary protection orders the same day, granting custody of the children to the Department. *See* 22 M.R.S. § 4034 (2018). A jeopardy hearing was held on June 18, 2018; the father did not appear at the hearing, and the court (*Carlson, J.*) later issued a jeopardy order. *See* 22 M.R.S. § 4035 (2018).

[¶3] On November 7, 2018, the Department filed a petition to terminate the father's parental rights, and the court held a two-day hearing on the petition the following month. By judgment dated January 3, 2019, the court terminated the father's parental rights. Based on clear and convincing evidence in the record, the court determined that the father (1) is unwilling or unable to protect his children from jeopardy and these circumstances are unlikely to change within a time which is reasonably calculated to meet their needs and (2) is unwilling or unable to take responsibility for the children within a time which is reasonably calculated to meet their needs. *See* 22 M.R.S. § 4055(1)(B)(2)(b)(i)-(ii). Finally, the court concluded that termination of the father's parental rights is in the children's best interests. *See id.* § 4055(1)(B)(2)(a).

[¶4] In support of those determinations, the court made the following findings of fact, which are supported by competent record evidence. *See In re Child of Erica H.*, 2019 ME 66, ¶ 3, --- A.3d ---.

The children came into the custody of the Department of Health & Human Services on March 5, 2018 after the children's mother . . . died on February 4, 2018 as a result of an apparent drug overdose in her home. At that time, the children were living with [the mother]. When the Department brought the child protection petition, [the father] was incarcerated. He continues to be incarcerated at this time, with a tentative release date of December 2019.

. . . Following their mother's death, [the children] were placed with [their maternal grandmother], where they remained until early May 2018, when they were placed in foster care . . . with their half-sibling . . . . They have remained in that placement since that time.

. . . The children are ages eight and nine. [The father] lived with the children and their mother until the summer of 2015, when he ended the relationship with [the mother] due to her drug and alcohol use. . . . [The mother] and [father's] relationship was marked by frequent arguments which occurred in the presence of the children.

. . . .

. . . In the spring of 2017, [the mother] . . . filed a Protection from Abuse Complaint individually and on behalf of the children, against [the father]. He did not appear for the final hearing and she was granted a two[-]year Order which expires on May 12, 2019. This Order prohibits [the father] from having contact with the children.

. . . .

At this point in time, [the daughter] needs a predictable, structured routine in her life, with consistent supervision and attention, clear rules and appropriate role modeling. She needs a caregiver that is physically and emotionally available to her, and one who has the ability to understand her needs and to put them first.

4

. . . Both children attend mental health counseling . . . .

. . . .

Since the children have come to live with the [foster parents], their behavioral health has greatly improved, which is due in large part to the feeling of personal safety they now have.

. . . .

[The father] has failed to provide any measure of stability or consistency in the children's lives for over three years. He has made poor choices that have resulted in continuous periods of incarceration and even during the brief periods of time when he was not incarcerated, he had little meaningful involvement in the children's lives. . . . These children simply cannot wait any longer for him to take responsibility for them.

. . . [I]t is in [the children's] best interests to terminate the parental rights of [their father] based on these children's need for permanency in a stable home environment. At this point in time, the [c]ourt has no confidence that [the father] will gain the ability to recognize the needs of the children, prioritize these needs ahead of his own and spend any amount of meaningful contact with them in the near future.

The Guardian *ad litem* supports termination of [the father's] rights.

A.     Parental Unfitness

[¶5]   Given these findings, all of which are supported by competent record evidence, the court did not impermissibly consider the father's incarceration in reaching its parental unfitness determination, and therefore it did not err in finding that the father is unfit. *See In re Children of Anthony L.*,

2019 ME 62, ¶ 9 n.3, 207 A.3d 624; *In re Asanah S.*, 2018 ME 12, ¶ 5, 177 A.3d 1273; *In re Alijah K.*, 2016 ME 137, ¶ 14, 147 A.3d 1159 ("Whether because of mental illness, substance abuse, violence, incarceration, or some other reason, a parent who is unable to meet his child's needs—now and for the foreseeable future—is an unfit parent whose parental rights are subject to termination.").

B.      Ineffective Assistance of Counsel

[¶6]   The father also directly raises a claim that his counsel at the termination hearing was ineffective.  We have recognized two ways in which a parent can raise a claim of ineffective assistance of counsel in a termination case.  *See In re Tyrel L.*, 2017 ME 212, ¶ 7, 172 A.3d 916; *In re M.P.*, 2015 ME 138, ¶ 27, 126 A.3d 718.  "First, if there are no new facts that the parent seeks to offer in support of the claim, the parent may make an ineffectiveness claim in a direct appeal from a termination order."  *In re Aliyah M.*, 2016 ME 106, ¶ 6, 144 A.3d 50.  "Second, if the basis for the parent's ineffectiveness challenge is not clear from the existing record and would require a court to consider extrinsic evidence, the parent must *promptly* move for relief from a judgment terminating his or her parental rights pursuant to M.R. Civ. P. 60(b)(6)."  *Id.* "Regardless of how the parent presents the claim, the parent must execute and

6

file an affidavit stating, with specificity, the basis for the claim." *In re Child of Stephen E.*, 2018 ME 71, ¶ 12, 186 A.3d 134. "[I]f a parent fails to submit a signed and sworn affidavit, the ineffectiveness claim . . . *must* be denied." *In re Aliyah M.*, 2016 ME 106, ¶ 9, 144 A.3d 50 (emphasis added).

[¶7] Here, the father asserts his ineffective representation claim on direct appeal.[2] He failed, however, to submit an affidavit, and thus we must deny his claim. "The strict procedural requirements for ineffective assistance claims . . . are designed to balance the parent's due process interests against the State's interests in providing stability and permanency for the child and therefore it is imperative that parents—and their counsel—ensure full compliance with these requirements." *In re Tyrel L.*, 2017 ME 212, ¶ 10, 172 A.3d 916 (stating that a parent's failure to submit a signed and sworn affidavit "alone is a sufficient basis for us to decline to remand the

---

[2] While this appeal was pending, the father filed a motion with the trial court for enlargement of time to file a motion for relief from judgment pursuant to M.R. Civ. P. 60(b)(6) alleging ineffective assistance of counsel, and he filed with us a motion to stay the appeal and permit the trial court to act on his motion. The Department filed oppositions to the father's motions. On April 26, 2019, the court (*Carlson, J.*) purported to deny his motion for failure to comport with Rule 7(b) of the Maine Rules of Civil Procedure. Although the court did not have the authority to act on the motion, *see* M.R. App. P. 3(b), we retroactively suspended the provisions of Rule 3(b) to give effect to the trial court's order, and denied the father's motion.

On May 3, 2019, before we issued the above order, the father also filed in the trial court a motion to reconsider and an amended motion for enlargement of time to file a motion for relief from judgment. The court informed the father that these motions would have to be filed with the Law Court if he wished to proceed. It appears from the record that the father did not take further action.

ineffectiveness claim to the trial court"); *In re Alexandria C.*, 2016 ME 182, ¶ 15, 152 A.3d 617; *In re M.P.*, 2015 ME 138, ¶ 21, 126 A.3d 718.

The entry is:

Judgment affirmed.

---

Heidi M. Drew, Esq., Lewiston, for appellant father

Aaron M. Frey, Attorney General, and Hunter C. Umphrey, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee Department of Health and Human Services

Rumford District Court docket number PC-2018-1
For Clerk Reference Only