MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2024 ME 66
Docket:      Oxf-23-60
Argued       January 10, 2024
Decided:     August 20, 2024

Panel:       STANFILL, C.J., and MEAD, HORTON, CONNORS, LAWRENCE, and DOUGLAS, JJ.*

IN RE CHILDREN OF DESTINY H.

STANFILL, C.J.

[¶1]  The mother of two children appeals from (1) a judgment of the District Court (South Paris, *Ham-Thompson, J.*) terminating her parental rights to the children and (2) the court's denial of her motion for relief from the judgment, in which she alleged ineffective assistance of counsel.  She argues that the court violated her due process rights in various ways throughout the proceedings and erred when it concluded that her trial attorneys' performance did not violate her right to the effective assistance of counsel.  We affirm.

## I. BACKGROUND

[¶2]  On September 2, 2021, the Department of Health and Human Services petitioned for child protection and preliminary protection orders on behalf of the children.  The Department had received a report from a hospital's

---

* Although Justice Jabar participated in this appeal, he retired before this opinion was certified.

pediatric intensive care unit regarding multiple severe, inflicted injuries to the younger child, who was then two months old. The report indicated that when the child was seen in the emergency department, some of the injuries were acute and others were healing. The Department alleged that the child had been in the care of the mother and her boyfriend when the injuries occurred, and that the mother, when questioned, had been unable or unwilling to explain what had caused the injuries. The District Court (*Dow, J.*) issued a preliminary protection order, placing both children in Department custody. The mother waived her right to a summary preliminary hearing, maintaining the preliminary protection order in effect.

[¶3] In a report submitted in November 2021, the guardian ad litem (GAL) noted that the older child had reported seeing, on the night the younger child was hospitalized, the mother's boyfriend hand the younger child to the mother and apologize for hurting him. On December 3, 2021, the court (*Ham-Thompson, J.*) granted a motion to withdraw filed by the mother's first attorney and appointed the mother a second attorney. The Department thereafter moved to amend its petition for a child protection order to allege an aggravating factor—that the mother subjected the children to treatment that is heinous and abhorrent to society—and to request an order permitting it to

cease efforts to reunify the mother and the children. *See* 22 M.R.S. §§ 4002(1-B)(A)(1), 4041(2)(A-2)(1) (2024). The motion was granted on December 27. Meanwhile, the court scheduled a contested jeopardy hearing for January 7, 2022.

[¶4] On the day before the scheduled jeopardy hearing, the mother, her second attorney, and the other parties appeared before the court to place an agreement on the record. The Department indicated that the parties agreed to a jeopardy order that would include the aggravating factor finding and would permit the Department to cease reunification efforts but would also include a rehabilitation and reunification plan and order the Department to continue paying for some services. The mother's second attorney indicated that the mother was agreeing to the order even though it contained terms she did not like. The mother never affirmatively expressed her agreement to or understanding of the order. The court expressed its belief that under the agreement "reunification [was] the primary goal" and that the mother's compliance with the terms of the jeopardy order would determine the course of the case moving forward.

4

[¶5]  The court issued a jeopardy order in accordance with the agreement,[1] stating that jeopardy was based on "the unexplained, serious, inflicted injuries sustained by" the younger child; the mother's "refusal to participate in services"; the mother's "refusal . . . to explain what occurred to cause" the injuries; and the mother's "continued relationship with [her boyfriend], a person who ha[d] acknowledged roughly handling [the child] and possibly causing injury."  The order prohibited all contact with the younger child and permitted contact with the older child only during the child's counseling sessions and only if deemed "therapeutically necessary" by the child's counselor.  The order also required the mother to take the following actions to relieve jeopardy:

- comply with the terms of the rehabilitation and reunification plan, including, among others,

    o "demonstrat[ing] an understanding of the impact of domestic abuse/violence on [the mother] and her children,"

    o "demonstrat[ing] insight into the long-term impact of [the younger child's] injuries on his development and an understanding of his present and future medical needs as a result of his injuries," and

    o "acknowledg[ing] how [the younger child] was injured and the maltreatment of" the older child;

---

[1]  The jeopardy order contained concurrent permanency plans for the children: reunification with the mother and adoption.  *See* 22 M.R.S. § 4038-B (2024).

- "meet with the Department, the Department's counsel, and the GAL to provide an explanation as to the injuries sustained by [the younger child] and discuss the allegations made by" the older child, "be open and honest with this information," and provide an explanation deemed "probable" by the Department's child abuse expert; and

- "participate actively and consistently in services," complete mental health and substance abuse evaluations, engage in regular individual mental health counseling, and "sign all releases necessary for the free exchange of information" among the Department, the GAL, and treatment providers.

The mother did not appeal from the jeopardy order. *See* 22 M.R.S. § 4006 (2024).

[¶6]   In May 2022, the children's maternal grandmother moved to intervene in the case, and in July 2022, the Department filed a petition for termination of the mother's parental rights. At a case management conference on August 19, 2022, the mother's second attorney withdrew, and the mother indicated that she wanted to retain a new attorney. The court appointed a third attorney to represent the mother in the event she did not retain an attorney.[2]

[¶7]   On September 6, 2022, the mother's third attorney moved to withdraw and the grandmother's attorney entered an appearance on the

---

[2] In its order, the court stated, "Should [the mother] decide to retain her own counsel, this shall not delay the proceedings." Noting that the hearing on the Department's petition to terminate parental rights was scheduled "as a backup case" in November 2022, the court stated, "Should [the] mother retain counsel, counsel needs to be available on [the dates indicated] as a motion to continue will be denied."

6

mother's behalf. The court entered an order denying the third attorney's motion to withdraw because the grandmother's attorney had not moved to withdraw from representing the grandmother, whose motion to intervene was still pending. The grandmother's attorney then filed a letter "as [his] motion to withdraw as [the grandmother's] counsel," and the grandmother filed a notarized letter waiving any conflict of interest related to her attorney's potential representation of the mother. The grandmother's attorney also filed a second entry of appearance for the mother. The court entered an order stating that the grandmother's attorney's motion to withdraw was "denied as it is not in proper format" and that the entry of appearance was "not granted as a knowing voluntary waiver [by the mother] of conflict of interest has not been filed." The mother then filed a notarized letter waiving any conflict of interest, and the grandmother's attorney filed a third entry of appearance for the mother on October 20. The next day, the court continued the case from the November trial list "due to lack of days" and the mother's "attorney issues." On November 15, the court granted the mother's third attorney's motion to withdraw from representing the mother and the grandmother's attorney's motion to withdraw from representing the grandmother. Based on the

appearance previously entered, the grandmother's former attorney became the mother's fourth attorney.

[¶8] The court rescheduled the hearing on the Department's termination petition for December 8 and 9, 2022. The mother did not file a witness or exhibit list prior to the hearing, as was required by a scheduling order that the court had issued. During the termination hearing, after the Department indicated that it did not object to the mother calling one of her witnesses despite the mother's failure to file a witness list, the court stated, "The court issued a scheduling order. Witness and exhibit lists were [not] provided on [the mother's] behalf. The court excluded [the mother] from calling any witnesses outside of herself. The parties agreed to do something different[].["3] The mother presented the testimony of three witnesses: an emergency room physician who treated the younger child in September 2021, a clinical social worker who had provided mental health treatment to the mother, and the

---

[3] The mother's fourth attorney would later assert in an affidavit that he had emailed the court on December 5, 2022, indicating that he would be filing a motion to continue. He asserted that the court arranged a conference that day and informed him that (1) it would not permit a continuance and (2) it would exclude any witnesses called by the mother at the termination hearing unless the Department agreed otherwise, because no witness list had been filed on behalf of the mother. The record does not contain a transcript of the December 5, 2022, conference or any pretrial order excluding the mother's witnesses. *See In re Child of Brooke B.*, 2020 ME 20, ¶ 3 n.2, 224 A.3d 1236.

8

children's maternal grandmother.[4] The clinical social worker was permitted to testify only regarding the beginning portion of his treatment of the mother and was not permitted to testify about his treatment thereafter because the mother had not provided the other parties with his records regarding the later treatment.

[¶9]  After the hearing, the court issued an order terminating the mother's parental rights, finding that the mother is unable to take responsibility for the children or protect them from jeopardy within a time reasonably calculated to meet their needs and that termination of the mother's parental rights and a plan of adoption are in the children's best interests.  *See* 22 M.R.S. § 4055(1)(B)(2)(a), (b)(i)-(ii) (2024).  The court found the following specific facts, which are supported by competent evidence in the record.  *See In re Children of Jason C.*, 2020 ME 86, ¶¶ 7-9, 236 A.3d 438.  The younger child suffered serious inflicted injuries on September 1, 2022, which resulted in emergency hospitalization and an extended stay in a pediatric intensive care

---

[4]  The mother's fourth attorney indicated that he planned to call two additional witnesses—the Department's child abuse expert and the mother's second attorney—but was unsure whether they were available.  The court gave him five minutes to try to reach those potential witnesses. The mother ultimately rested without calling them.

unit.[5]  The mother appeared unconcerned with the severity or cause of the injuries.  The mother has protected her boyfriend, who was the only adult physically present with the child during the moments that the acute injuries occurred, and she remained in a relationship with him for months after telling the Department that she had ended the relationship.  She has not acknowledged any responsibility for placing the children in a dangerous situation.

[¶10]  The mother has also refused to cooperate with the Department since the inception of the case, and she has not made any meaningful progress toward reunification.  She declined to sign releases for the records of her mental health counselor and psychiatrist, so the frequency of her attendance and progress towards treatment goals are unknown.  She refused to allow Department caseworkers to view her home.  She did not meet with the Department and GAL to discuss the younger child's injuries.  She recently became allied with the grandmother in vilifying the GAL and the Department, and she showed a lack of insight by suggesting that the grandmother, who has no significant history with the children, would be a suitable placement.

---

[5] When the child arrived at the emergency department, he was having a seizure and had multiple bruises to three different parts of his body, bleeding of the tongue, a brain bleed, a broken clavicle, and an injury to his face that could not be ruled out as a burn injury.  A doctor described the child as "near death."

10

[¶11]  The older child has significant behavioral and emotional needs. Permanency is very important for him; he is "a concrete thinker and struggles with the uncertainty of his future and understanding his place in the world." He "needs to feel physically and emotionally safe in order to process his emotions and the grief of losing his father."[6]  The younger child is living with two aunts and their children.  He has high emotional and medical needs, due in part to his inflicted injuries, and is bonded with the resource caregivers and their family members.

[¶12]  The court issued the termination judgment in late January 2023. As is the usual practice, the court appointed a new attorney for the mother on February 10, and the mother appealed from the judgment five days later.  This was the mother's fifth attorney.  On March 6, the mother moved in the trial court for relief from the judgment, alleging ineffective assistance of counsel at both the jeopardy and termination stages of the proceedings.  *See* M.R. Civ. P. 60(b); *In re M.P.*, 2015 ME 138, ¶¶ 19-21, 126 A.3d 718.  She attached affidavits executed by herself and her third and fourth attorneys.  We granted the mother's motion to permit the trial court to act on the Rule 60(b) motion and stayed her appeal.

---

[6]  The children's father died of COVID-19 in April 2021, five months before this case began.

[¶13]  At a case management conference on April 10, 2023, the trial court indicated that it was pressed to schedule a hearing on the Rule 60(b) motion quickly because the Assistant Attorney General representing the State would be leaving his position soon.  The court expressed disapproval at the mother's stated plan to call between ten and twelve witnesses.  The mother's fifth attorney explained that to demonstrate that the mother was prejudiced by trial counsel's failure to present certain witness testimony during the termination hearing, she would need to establish what that testimony would have been.  The court stated: "This hearing is not going to take any longer than two days.  The Department will get to call its witnesses.  The [GAL] will obviously be able to testi[fy] and call the one [witness she had indicated she wanted to call].  And [mother's attorney], you get your witnesses, whatever remains in there."[7]  In a procedural order governing the Rule 60(b) hearing issued after the conference, the court ruled that because the mother had not filed with her Rule 60(b) motion affidavits from several proposed witnesses who she claimed should have been produced for the termination hearing, she would not be able to call those witnesses.  In so doing, the court relied on our previously-expressed rule

---

[7]  The court also stated, "[Y]ou want to put on several witnesses.  And I understand that, in part, is your right.  Not completely 100 percent your right to drag in as many witnesses as you want."

that a parent claiming ineffective assistance of counsel must submit, with her Rule 60(b) motion, "affidavits from any individuals the parent asserts should have been called as witnesses during the termination hearing." *In re M.P.*, 2015 ME 138, ¶ 21, 126 A.3d 718; *see also In re Children of Meagan C.*, 2019 ME 129, ¶ 22, 214 A.3d 9 ("If the parent asserts that counsel's deficiency was due to his or her failure to call any individuals as witnesses during the termination hearing, the parent's motion must be accompanied by signed and sworn affidavits from those individuals."); *In re Aliyah M.*, 2016 ME 106, ¶ 8, 144 A.3d 50.

[¶14] On April 25, 2023, the court notified counsel by email that the hearing on the mother's Rule 60(b) motion was scheduled for May 5. Despite the earlier discussion that the hearing would take two days, only one day was allotted. The mother immediately moved to continue the hearing, arguing that the scheduling did not allow sufficient time to prepare for the hearing to satisfy her due process rights. The court denied the motion without comment. On the day of the hearing, the mother filed a motion to amend her Rule 60(b) motion to supplement the motion with affidavits of the mother's mental health care provider and of a psychologist who performed a parental diagnostic evaluation of the mother. Because the mother filed the motion to amend on the day of the

hearing and the Department had not had an opportunity to respond, the court indicated during the hearing that it was "not before the Court" and that it would consider the motion after the hearing and on the pleadings only. The mother presented the testimony of herself; her second, third and fourth attorneys; and an expert attorney witness.[8] Her fifth attorney indicated that her only other witnesses were "related to that motion to amend [the Rule 60(b) motion], which I think the Court must make a decision on." The court reiterated its decision not to rule on the motion to amend until after the hearing and thus did not hear from the psychologist or mental health care provider.

[¶15] On June 7, 2023, the trial court issued an order denying the mother's Rule 60(b) motion. The court first denied as untimely the mother's motion to amend the Rule 60(b) motion. *See In re Evelyn A.*, 2017 ME 182, ¶¶ 15-22, 169 A.3d 914. The court also rejected the mother's claim of ineffective assistance during the jeopardy phase as untimely and, in the alternative, determined that the mother had not demonstrated that her second attorney's performance in negotiating and presenting the agreed-upon jeopardy order was deficient. As to the termination stage, the court determined

---

[8] The mother had not submitted an affidavit of the expert witness with her Rule 60(b) motion, and the parties and the court discussed at length the admissibility of the expert's testimony. The court reserved ruling on the issue until after the hearing and ultimately admitted the testimony.

14

that the mother had not demonstrated that any deficient performance by her fourth attorney had prejudiced her. The mother filed a notice of appeal from the order denying her Rule 60(b) motion. We then lifted the stay on the direct appeal and consolidated the two appeals.

## II. DISCUSSION

### A. Sufficiency of the Evidence Regarding Termination

[¶16] We begin by recognizing that the findings supporting the termination of parental rights—that the mother is unfit to parent the children and that termination is in the children's best interests—are supported by the record before the trial court.[9] *See* 22 M.R.S. § 4055(1)(B)(2)(a), (b)(i)-(ii). "We review the court's findings of fact for clear error and the court's ultimate determination that termination of the parental rights is in the child's best interest for an abuse of discretion." *In re Children of Jason C.*, 2020 ME 86, ¶ 7, 236 A.3d 438 (quotation marks omitted). "The court must examine from the child's perspective—not the parent's—the time within which the parent can

---

[9] The mother does not appear to contend that the evidence presented to the trial court during the termination hearing is insufficient to support the court's findings of unfitness. Instead, in accordance with her due process argument, she argues that "[t]he trial court's 'rulings' that limited [her] ability to call witnesses and present evidence leaves the record in her termination of parental rights hearing wholly incomplete."

take responsibility for a child and protect that child from jeopardy." *Id.* (alteration and quotation marks omitted).

[¶17] As the State argues, the mother's inability "to acknowledge that her [child's] injuries were not accidental," *In re B.C.*, 2014 ME 99, ¶ 6, 97 A.3d 1086, is "at the heart of her unfitness." During the termination hearing, the mother continued to assert that she did not know what happened to her child and that she could not agree that the injuries were inflicted. The court was presented with evidence that the child's injuries were inflicted, however, and that the mother's boyfriend told the mother the day after the child went to the emergency department that he "thought [he] could get [the child] to stop crying by doing it [his] way and it backfired." Given the evidence of the mother's inability to acknowledge any responsibility for the injuries, her continued lack of insight into the children's needs, and her failure to comply with many of the requirements outlined in the jeopardy order, the court's findings of unfitness and its best interests determination did not—on the record before the court—constitute clear error or an abuse of discretion. *See id.* ¶¶ 3-11, 16; *In re Kafia M.*, 1999 ME 195, ¶¶ 12, 14-16, 742 A.2d 919.

## B.    Due Process

[¶18]  The mother argues that she was denied due process in various ways throughout the proceedings.  Generally, we examine alleged due process violations de novo.  *In re Robert S.*, 2009 ME 18, ¶ 12, 966 A.2d 894. Unpreserved constitutional challenges, however, are reviewed for obvious error. *In re Child of Corey B.*, 2020 ME 3, ¶ 12, 223 A.3d 462.  "Obvious error is error that is seriously prejudicial error tending to produce a manifest injustice." *In re Child of Lacy H.*, 2019 ME 110, ¶ 9, 212 A.3d 320 (quotation marks omitted).

[¶19]  "The state must use procedures that align with due process requirements when terminating parental rights." *In re Child of Kenneth S.*, 2022 ME 14, ¶ 16, 269 A.3d 242.  "In termination cases, where fundamental interests are at stake, due process requires: notice of the issues, an opportunity to be heard, the right to introduce evidence and present witnesses, the right to respond to claims and evidence, and an impartial fact-finder."  *In re Child of James R.*, 2018 ME 50, ¶ 17, 182 A.3d 1252 (quotation marks omitted).

### 1.    Termination Proceeding

[¶20]  We now turn to the mother's specific contentions.  The mother argues first that the termination court erred when it ruled that she would not

be permitted to present witnesses other than herself during the hearing, because no witness list had been filed on her behalf. Although we generally review evidentiary rulings for an abuse of discretion or clear error, *In re Arturo G.*, 2017 ME 228, ¶ 19, 175 A.3d 91, because the mother did not object to this ruling, our review of its due process implications is for obvious error, *see In re Child of Corey B.*, 2020 ME 3, ¶ 12, 223 A.3d 462.

[¶21] "[T]o assert a procedural due process error on appeal, a party must articulate an identifiable prejudice." *In re Child of Kenneth S.*, 2022 ME 14, ¶ 22, 269 A.3d 242. At the time of the termination hearing, the mother did not identify how the ruling prejudiced her. *See id.* ¶¶ 22-27. She did not make an offer of proof on the record as to what evidence the excluded witnesses would have presented, and she did, by agreement of the parties, have the opportunity to call five witnesses during the termination hearing, although some of the testimony was limited.[10] On the record before us, we cannot conclude that the result would have been different but for the court's ruling, and we therefore cannot conclude that the ruling constitutes obvious error.[11] *See State v. Gagne*,

---

[10] As discussed above, three of these witnesses testified during the trial; the mother was unable to reach the other two.

[11] We do not mean to suggest that it is a best practice, in a termination hearing at which the protection of a parent's due process rights is critical, *see In re Child of Ryan F.*, 2020 ME 21, ¶¶ 21-22, 224 A.3d 1051, to impose a blanket exclusion of all witnesses not identified on a formal witness list—

2017 ME 63, ¶¶ 36-38, 159 A.3d 316 (concluding that a court did not abuse its discretion by excluding defense witnesses not identified on a witness list even though the defendant's right to call witnesses on behalf of the defendant "has long been recognized as essential to due process" (alteration and quotation marks omitted)).

[¶22]  Next, the mother argues that the court violated her due process rights when it thwarted her fourth attorney's attempts to enter an appearance on her behalf until just before the termination hearing, while simultaneously making clear that no continuances would be granted.[12]  The court was concerned about the potential for a conflict of interest based on the fourth attorney's representation of the grandmother, who had moved to intervene. *See* M.R. Prof. C. 1.7(a)(2), (b); M.R. Prof. C. 1.9(a).[13]  In contrast to a motion to

---

days before trial and without inquiring as to what role the proposed witnesses would play or the extent of the surprise, if any, to the opposing party.  Courts must balance the need for a fair, orderly proceeding with the right of the parent to present evidence, which serves to protect the parent's fundamental right to care for the parent's child. *See Capelety v. Estes*, 2023 ME 50, ¶¶ 20-25, 300 A.3d 817; *In re A.M.*, 2012 ME 118, ¶ 16, 55 A.3d 463.

[12]  The Department has provided no response to this argument.

[13]  These rules provide:

[A] lawyer shall not represent a client if . . . there is a significant risk that the representation of one or more clients would be materially limited by the lawyer's responsibilities to another client [or] a former client[, unless] the lawyer reasonably believes that the lawyer would be able to provide competent and diligent

withdraw or a motion to continue, however, an entry of appearance is not a motion upon which a court acts; it is simply a notification to the court that a person will be appearing before the court as legal counsel. *See Entry*, Black's Law Dictionary (12th ed. 2024) ("The placement of something before the court or on the record."); *Appearance*, Black's Law Dictionary (12th ed. 2024) ("A coming into court . . . as a lawyer on behalf of a party or interested person . . . ."); *Barham v. State*, 641 N.E.2d 79, 80-85 (Ind. App. 1994) (distinguishing the analysis applicable to a motion to continue from the analysis applicable when an attorney has entered an appearance shortly before or during trial, and concluding that a court erred by "denying" a late entry of appearance by private counsel).

[¶23] In any event, no party objected and we cannot say that the court's handling of this issue prejudiced the mother. Although the court effectively delayed the fourth attorney's effort to represent the mother, the mother was

---

representation to each affected client [and] each affected client gives informed consent, confirmed in writing.

M.R. Prof. C. 1.7(a)(2), (b). In addition,

A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

M.R. Prof. C. 1.9(a).

still being represented by her third attorney. The mother challenges the adequacy of that representation, as we discuss below. Nonetheless, the mother does not identify how the delay itself adversely affected her opportunity to be heard, nor does the record compel the conclusion that it did.

### 2. Rule 60(b) Proceeding

[¶24] The mother argues that the process in adjudicating her Rule 60(b) motion was unfairly rushed.[14] The hearing took place two months after the mother filed her motion, upon approximately ten days' notice. "When due process is implicated, we review . . . procedural rulings [such as the denial of a motion to continue] to determine whether the process struck a balance between competing concerns that was fundamentally fair." *Adoption by Jessica M.*, 2020 ME 118, ¶ 8, 239 A.3d 633 (quotation marks omitted).

[¶25] Although its management of the Rule 60(b) claim could be characterized as somewhat exacting, the court appropriately balanced the mother's right to an opportunity to fairly present her ineffective-assistance claim at a hearing and the "State's important interest in expeditiously

---

[14] The court's statements during a pretrial conference on the Rule 60(b) motion—that the Department and the GAL would be granted time to present their witnesses but that the mother "would get your witnesses, whatever remains in there"—can be taken to imply that the mother's evidence was less important than that of the Department and the GAL.

establishing permanent plans for children." *In re M.P.*, 2015 ME 138, ¶ 36, 126 A.3d 718; *see* 22 M.R.S. § 4003(3) (2024) (providing that a purpose of Maine's child protection statutes is to "prevent needless delay for permanent plans for children when rehabilitation and reunification is not possible"); *Adoption by Jessica M.*, 2020 ME 118, ¶ 12, 239 A.3d 633 (balancing a parent's "significant interest in a fair proceeding" against "the need to provide a timely determination for all of the parties involved"); *In re William S.*, 2000 ME 34, ¶ 13, 745 A.2d 991 ("Any delay [in a child protection matter] potentially harms a child who has already endured significant trauma and is in dire need of permanency."); *In re Child of Radience K.*, 2019 ME 73, ¶ 58, 208 A.3d 380 ("[T]he importance of protecting parents' fundamental right to effective assistance of counsel must be balanced against the simultaneous interest of the State in promoting the early establishment of permanent plans for the children." (quotation marks omitted)); *In re Evelyn A.*, 2017 ME 182, ¶¶ 18-22, 169 A.3d 914 (describing "the intensely time-sensitive nature of child protection proceedings," concluding that "allowing amendments to motions for relief months after the established deadline should not be permitted except in the most extraordinary of circumstances," and holding that a trial court abused its discretion when it allowed a parent to amend a motion for relief to challenge

the effectiveness of counsel at the jeopardy stage and determined that counsel should have advised the parents to agree to a jeopardy order rather than proceed to trial).  Because the court fairly balanced competing concerns when scheduling the Rule 60(b) proceeding, it did not violate the mother's due process rights.[15]

### C.    The Mother's Claim of Ineffective Assistance of Counsel

[¶26]  The mother next argues that the assistance she received from counsel throughout the proceedings was ineffective, and that the trial court therefore erred when it determined that (1) her lawyer's assistance during the jeopardy phase was not deficient and (2) she had not demonstrated that she was prejudiced by any deficient performance by her attorneys between the entry of the jeopardy order and the entry of the judgment terminating her parental rights.  "When a parent raises a claim of ineffective assistance of counsel in a child protection case, it is the parent's burden to show that (1) counsel's performance was deficient, i.e., that there has been serious incompetency, inefficiency, or inattention of counsel amounting to

---

[15]  We find no support in the record for the mother's additional argument that the court's case management decisions demonstrate that the trial judge was not an impartial factfinder.  *See In re Children of Melissa F.*, 2018 ME 110, ¶ 15, 191 A.3d 348; *In re M.E.*, 2016 ME 1, ¶ 14 & n.3, 131 A.3d 898.

performance . . . below what might be expected from an ordinary fallible attorney; and (2) the deficient performance prejudiced the parent's interests at stake in the termination proceeding to the extent that the trial cannot be relied on as having produced a just result." *In re Alexandria C.*, 2016 ME 182, ¶ 18, 152 A.3d 617 (quotation marks omitted). The parent "must overcome 'a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *In re Children of Kacee S.*, 2021 ME 36, ¶ 19, 253 A.3d 1063 (quoting *Strickland v. Washington*, 466 U.S. 668, 689 (1984)). "Counsel's performance is not deficient if the record reflects a flawed but ultimately understandable trial strategy. Rather, the performance must be manifestly unreasonable." *Id.* ¶ 20 (citations and quotation marks omitted).

[¶27] We review the findings supporting a decision on an ineffectiveness claim for clear error. *In re Alexandria C.*, 2016 ME 182, ¶ 19, 152 A.3d 617. "Because the parent alleging counsel's ineffectiveness had the burden of proof, on appeal the parent must demonstrate that a contrary finding is compelled by the evidence." *Id.* We review the ultimate decision denying a Rule 60(b) motion alleging ineffective assistance of counsel for an abuse of discretion. *Id.*

### 1.   Jeopardy Phase

[¶28]  The mother argues that her second attorney's performance was constitutionally ineffective because he was inadequately prepared for a contested jeopardy hearing and rushed the mother into agreeing to the proposed jeopardy order without adequately explaining its terms to her.  She also argues that after the entry of the jeopardy order, the second attorney failed to adequately explain to the mother that her options included pursuing an ineffective-assistance claim, either by appealing from the jeopardy order or moving for relief under Rule 60(b).  The Department argues that the evidence does not compel a determination that the second attorney's performance was deficient.  In addition, citing our decision in *In re Child of Radience K.*, 2019 ME 73, 208 A.3d 380, the Department argues that review of counsel's performance connected with the jeopardy phase is, at this stage, unavailable to the mother. *See id.* ¶ 59 ("If . . . a parent were allowed to wait until after the entry of a termination judgment before reaching back and challenging the process affecting a much earlier phase in the case, there would be the prospect that much of the case could be unwound, resulting in unnecessary and damaging delays in the case's resolution.").  The mother counters that review should be available in these circumstances to protect a parent's due process rights, given

that an attorney's failure to raise an ineffectiveness claim promptly after the issuance of a jeopardy order might itself be grounds for an ineffective assistance claim. *See In re Children of Kacee S.*, 2021 ME 36, ¶ 16, 253 A.3d 1063. Moreover, as the mother argues, any deficits in representation during the jeopardy stage are highly likely to affect the course of the rest of the case.

[¶29]  We have held that (1) parents have a right to "competent and effective" representation at the jeopardy stage of a child protection proceeding and (2) "the procedural requirements governing a motion for relief from judgment based on a claim of ineffective assistance of counsel in a jeopardy proceeding—including the deadlines for filing such a motion relative to the date a jeopardy order is entered—are the same as those we prescribed for a claim of ineffectiveness at a termination hearing." *In re Child of Radience K.*, 2019 ME 73, ¶¶ 56-59, 208 A.3d 380 (citing *In re M.P.*, 2015 ME 138, ¶¶ 18-21, 126 A.3d 718); *see also In re Evelyn A.*, 2017 ME 182, ¶¶ 15-22, 169 A.3d 914; *In re Children of Meagan C.*, 2019 ME 129, ¶¶ 8-9, 26, 214 A.3d 9.

[¶30]  In *In re M.P.*, the case in which we set forth the procedural requirements we referenced in *In re Child of Radience K.*, we left "to future development the potential that, after balancing the children's interests with the parent's interests," a trial court may accept a late-filed Rule 60(b) motion

alleging ineffective assistance of counsel in "exceptional and unusual circumstances." *In re M.P.*, 2015 ME 138, ¶ 20 n.4, 126 A.3d 718. We did not revisit this potential exception until 2021, in *In re Children of Kacee S.*, 2021 ME 36, 253 A.3d 1063. There, we construed as timely a late-filed amended motion for relief from a termination judgment where the parent had initially filed a timely, but procedurally flawed, motion. *Id.* ¶¶ 12-17. Because the parent "moved expeditiously" at every stage and "pursue[d] her ineffectiveness claim with diligence and alacrity," we expressly applied the exception for "exceptional and unusual circumstances," explaining that "[i]t would be a strange system of justice that allowed a parent's claim of ineffective assistance of counsel regarding one attorney to be stymied because another attorney rendered ineffective assistance in asserting the claim." *Id.* ¶¶ 15-17 & n.5, 35.

[¶31] Here, we need not address whether the mother's challenge to her second attorney's effectiveness should be construed as timely. Although the motion court concluded that the challenge was untimely under *Child of Radience K.*, the court went on to address the merits of the mother's challenge, determining that the second attorney's performance did not fall below what might be expected from an ordinary fallible attorney. *See, e.g.*, *In re Alexandria C.*, 2016 ME 182, ¶ 18, 152 A.3d 617. The record does not compel a

contrary finding. *See id.* ¶ 19. The court was entitled to rely on the second attorney's testimony during the Rule 60(b) hearing that the mother "was adamant she did not want a hearing," "was concerned about . . . possibly having to plead the fifth," and "wanted [him] to negotiate a jeopardy order" that included an opportunity to reunify. The second attorney testified that he was "negotiating constantly" with the State leading up to the scheduled jeopardy hearing, "knowing that [the mother] did not want a hearing," and "finally came to an agreement that had a cease [reunification order], but with an exception carved out for her to get services after an eval and recommendations were had. And the Department was agreeing to pay for all that." The second attorney testified that he had discussed the aggravating factor with the mother and that she "was going to agree to the order that [the State was] proposing, and I was just trying to make it better." Similarly, the mother's expert testified, "[I]f it's true that all along there was an expectation between [the mother and her second attorney] that there wasn't going to be a hearing, it wouldn't surprise me that his focus was on—on an agreement rather than, you know, seeking an expert."

[¶32] Negotiating and obtaining a jeopardy agreement is often a reasonable trial strategy, and the terms of the agreement were not manifestly

unreasonable. *See In re Children of Kacee S.*, 2021 ME 36, ¶¶ 19-20, 253 A.3d 1063. Given the motion court's findings, therefore, it also was not ineffective assistance for the second attorney or the subsequent attorneys to fail to advise the mother to attempt to appeal from the agreed-upon jeopardy order or move for relief from the order on ineffective-assistance grounds. *See id.* ¶ 19.

### 2. Termination Phase

[¶33] The mother argues that there were various deficiencies in her attorneys' performance between the entry of the jeopardy order and the entry of the judgment terminating her parental rights to the children. She claims that her second attorney failed to turn his case file over to her third attorney and that neither her third nor her fourth attorney obtained a complete record of the case or proceedings before the termination hearing. She claims that her third attorney did not interview any potential witnesses or file a witness list and did not request co-counsel even though co-counsel would have been required for the third attorney to represent the mother in a contested termination hearing.[16] She argues that her fourth attorney's performance was ineffective because he

---

[16] The mother's third attorney testified that co-counsel would have been required because she had not acted as the lead attorney representing a parent in a final termination hearing before. She testified that she had discussed with another attorney the possibility of serving in the co-counsel role, and that she was "on the edge of" making that formal request with the court when the court "accepted" the fourth attorney's entry of appearance.

did not press his motion to continue the termination hearing; did not file a witness list, resulting in limitations on the evidence that the mother could present during the hearing; and did not adequately prepare for the hearing or advocate for the mother during the hearing. The Department responds that the trial court acted within the bounds of its discretion when it denied the mother's motion for relief from the judgment because the mother did not demonstrate how the result would have been different but for these alleged deficiencies.

[¶34] Although the trial court addressed only the prejudice prong of the ineffective-assistance analysis, *see, e.g.*, *In re Child of Kenneth S.*, 2022 ME 14, ¶ 31, 269 A.3d 242, we take the opportunity to point out that the record reveals troubling points in the mother's representation leading up to the termination hearing. It should go without saying, for example, that an attorney charged with defending a parent's fundamental right of parenthood should not attempt to do so without obtaining the complete case file, investigating potential witnesses, obtaining necessary records, or filing a witness and exhibit list in preparation for a contested termination hearing. These omissions put a parent's rights at risk and generally cannot be characterized as constituting even a "flawed but

ultimately understandable trial strategy." *In re Children of Kacee S.*, 2021 ME 36, ¶ 20, 253 A.3d 1063.[17]

[¶35]  The motion court determined that the mother had not demonstrated that her attorneys' performance "prejudiced [her] interests at stake in the termination proceeding to the extent that the trial cannot be relied on as having produced a just result." *In re Alexandria C.*, 2016 ME 182, ¶ 18, 152 A.3d 617 (quotation marks omitted).  On this record, we cannot conclude that the record compels contrary findings or that the court abused its discretion.  Despite the attorney's failure to file a witness list before the termination hearing, the mother was able to testify on her own behalf and present three additional witnesses.  In determining that there was no reasonable probability that the testimony of other witnesses the mother claimed her attorney should have presented during the termination hearing would have changed the result, the court noted that the mother would have been unable to overcome the evidence supporting the findings of unfitness and that termination is in the children's best interests.  As the court noted, many of

---

[17]  We recognize there may be cases where a parent has little or no helpful evidence to present at a termination hearing and so the failure to file a witness and exhibit list may therefore be intentional or of no consequence.  That was not true here, however, as the mother tried and, to some extent succeeded, to present witnesses at the termination proceeding.

the missing witnesses identified by the mother at the Rule 60(b) hearing had little or no involvement with the family after the removal of the children.[18] The GAL testified at the motion hearing that she did not believe that testimony from any of the different witnesses that the mother claimed she was unable to present would have changed her opinion or the outcome and that it was the mother's own actions that led to the termination of her parental rights.

[¶36] In addition, the evidence does not compel a determination that a reasonable probability exists that the result of the proceeding would have been different if counsel had obtained a more complete record of the prior proceedings before the termination hearing. This case is unlike *In re Children of Kacee S.*, in which the parent's attorney "appeared well after the hearing began," claiming to believe that the matter had been continued; decided not to join another parent's motion to continue the hearing; and "presented no evidence, called no witnesses, and offered no closing argument," leaving "the Department's narrative entirely unchallenged." 2021 ME 36, ¶¶ 26-27, 253 A.3d 1063. Here, the mother's fourth attorney advocated for the mother during

---

[18] Some were clearly of limited relevance, like the mother's prenatal medical providers, a doctor who had been the pediatrician before the Department was involved, or the mother's foster mother when she was a teenager. Others may have been a closer call, like a parenting educator with whom the mother took courses.

the termination hearing, cross-examining all the Department's witnesses and presenting three witnesses in addition to the mother herself. *See In re Children of Kimberlee C.*, 2018 ME 134, ¶ 6, 194 A.3d 925 (holding that a parent failed to show ineffective assistance of counsel in a termination proceeding when the parent's "attorney made several objections, including at least one objection sustained by the court," elicited favorable testimony, "rigorously cross-examined each witness, some multiple times," and facilitated the parent's testimony).

[¶37]  In summary, although there were flaws in the mother's representation, we cannot say that these flaws compelled a finding of ineffective assistance of counsel.

**D.    Revision of the Process for Rule 60(b) Ineffective Assistance Claims**

[¶38]  Despite our conclusion that the motion court did not abuse its discretion in determining that the mother ultimately was not prejudiced by any deficient performance, we are concerned about the fairness of the process that we have established for claims of ineffective assistance of counsel in child protection proceedings.  We agree with the mother that some of the processes and timelines that we set in place to govern Rule 60(b) motions in child protective cases, *see In re M.P.*, 2015 ME 138, ¶¶ 20-21, 126 A.3d 718, have

proven unrealistic in practice. When we established the required procedure, we noted the absence of legislative guidance and anticipated that experience might necessitate revisitation, at least in some respects. *See id.* ¶¶ 17-19, 20 n.4. Based on what we have observed in practice as the process we have required since 2015 has been applied, we are persuaded that two changes are needed to better ensure that Rule 60(b) claims of ineffective assistance continue to "avoid delays in the final adjudication of a parent's parental rights, allowing the children some hope of permanence and finality, while at the same time allowing a parent to be heard if there has truly been a lapse in the service of the attorney." *In re Children of Meagan C.*, 2019 ME 129, ¶ 25, 214 A.3d 9.

[¶39] First, the current deadline to file a Rule 60(b) motion alleging ineffective assistance of counsel—twenty-one days after the expiration of the time to file a direct appeal from a jeopardy order or termination judgment, *see In re M.P.*, 2015 ME 138, ¶ 20, 126 A.3d 718—has proven to be unrealistically short. We accounted for the possibility that this deadline could be extended in "exceptional and unusual" circumstances, *see id.* ¶ 20 n.4, but in reality, it is typically very difficult to comply with this timeline.[19] *See In re Children of*

---

[19] The case before us is emblematic of the sometimes insurmountable procedural hurdle that this timeline presents for a parent—and appellate counsel—seeking adjudication of a claim that their constitutional right to the effective assistance of counsel has been violated. Here, the termination

*Shannevia Y.*, 2023 ME 76, ¶ 10 n.3, 306 A.3d 625 (describing a persuasive but ultimately unsuccessful argument that it would have been impossible to comply with this requirement). We therefore now adjust the timeline to require that a parent claiming ineffective assistance of counsel in a Rule 60(b) motion file that motion within forty-two days, instead of twenty-one days, after the expiration of the deadline to file a notice of appeal from the judgment.

[¶40] Second, the requirement that a parent claiming in a Rule 60(b) motion that she received ineffective assistance of counsel must attach affidavits "from any individuals the parent asserts should have been called as witnesses during the termination hearing" and "any individuals who have evidence that would bolster the parent's claim that the performance of his or her attorney was deficient and that the deficiency affected the fairness of the proceeding," *In re M.P.*, 2015 ME 138, ¶ 21, 126 A.3d 718,[20] has also proven to be unworkable, as the mother has argued. In particular, a parent may not be able to compel the signing of an affidavit by every potentially relevant witness, either within the

---

judgment was entered on the docket on January 24, 2023, meaning that the deadline for a notice of appeal was February 14. *See* M.R. App. P. 2B(c)(1). Appellate counsel was appointed on February 10, seventeen days after the entry of the judgment and four days before the deadline for the notice of appeal. Under the existing timeframe, appellate counsel then had just twenty-five days to obtain and review the file, interview potential witnesses, obtain affidavits, and prepare and file a Rule 60(b) motion.

[20] *See also, e.g.*, *In re Children of Meagan C.*, 2019 ME 129, ¶ 22, 214 A.3d 9; *In re Aliyah M.*, 2016 ME 106, ¶ 8, 144 A.3d 50.

given time frame or, indeed, at all.[21]   It is difficult to protect a parent's due process rights while denying an ineffective-assistance claim solely on the ground that the parent failed to secure affidavits from witnesses.  *See In re Aliyah M.*, 2016 ME 106, ¶ 9, 144 A.3d 50 ("[T]hese processes are designed to balance the parent's due process interests against the State's interests in providing stability and permanency for the child.").

[¶41]  We are persuaded, therefore, to relax the requirement that the Rule 60(b) motion be accompanied by affidavits from every witness the parent intends to present.  When a parent files a Rule 60(b) motion making an ineffective-assistance claim, the parent must still file the parent's own affidavit containing an offer of proof that details the evidence the parent intends to present in support of the claim.  *See In re M.P.*, 2015 ME 138, ¶ 21, 126 A.3d 718.[22]  We emphasize that it remains in the parent's interest to be specific and to include affidavits from potential witnesses where possible, because the trial court has discretion to determine what process "'is necessary to meaningfully assess a parent's claim,'" including whether to hold an evidentiary hearing at

---

[21]  A party can compel a witness to appear in court by subpoena, *see* M.R. Civ. P. 45(a)(1)(C), but cannot compel anyone to execute an affidavit.

[22]  *See also, e.g.*, *In re Tyrel L.*, 2017 ME 212, ¶ 10, 172 A.3d 916; *In re Children of Matthew G.*, 2019 ME 106, ¶¶ 6-7, 211 A.3d 226.

all. *In re Child of Shaina T.*, 2019 ME 107, ¶ 17, 211 A.3d 229 (quoting *In re M.P.*, 2015 ME 138, ¶ 36, 126 A.3d 718).

[¶42]  We need not determine whether the revised process we now announce for Rule 60(b) ineffective-assistance claims ought to apply to this case because we are satisfied it would not have affected the trial court's conclusion that the mother could not demonstrate that her attorneys' performance prejudiced her.  The witnesses the mother identified that she was prohibited from calling at the Rule 60(b) hearing were a psychologist who performed a parental diagnostic evaluation of the mother and the mother's mental-health-care provider.  Neither of those witnesses' testimony would have been directed at the central problem in this case—the mother's failure to acknowledge any responsibility for or insight into the life-threatening, intentional harm her younger child experienced, her continuing inability to understand the children's needs, and her continued failure to comply with many of the reunification requirements imposed by the jeopardy order.  Because we conclude that there was no actual prejudice from excluding these witnesses, the application of the revised process we announce today could not have altered our analysis.

### III. CONCLUSION

[¶43]  We have taken some care to detail the troubling course of the proceedings in this case.  We recognize the complexities facing the court and counsel and are deeply mindful of the competing interests at stake.  *See, e.g., In re Child of Radience K.*, 2019 ME 73, ¶ 58, 208 A.3d 380 (recognizing the State's interest "in promoting the early establishment of permanent plans for the children" (quotation marks omitted)).  Delay for a child in dire need of permanency may well cause additional harm and trauma*.  In re William S.*, 2000 ME 34, ¶ 13, 745 A.2d 991.  On this record, we cannot conclude that the court erred or abused its discretion in determining that the mother is unfit and termination of the mother's parental rights is in the children's best interest.  We also cannot conclude that the court violated the mother's due process rights.  Moreover, it is the mother's "burden to show that (1) [her] counsel's performance was deficient . . . and (2) the deficient performance prejudiced [her] interests at stake in the termination proceeding to the extent that the trial cannot be relied on as having produced a just result." *In re Child of Shaina T.*, 2019 ME 107, ¶ 18, 211 A.3d 229 (quotation and citation omitted).  We thus

cannot conclude that the court erred or abused its discretion in denying the Rule 60(b) motion alleging ineffective assistance of counsel.

The entry is:

Judgment affirmed.

---

Taylor Kilgore, Esq. (orally), Kilgore Law, PLLC, Turner, and Julian Richter, Esq., Family Advocacy of Maine, Bath, for appellant Destiny H.

Aaron M. Frey, Attorney General, and Hunter C. Umphrey, Asst. Atty. Gen. (orally), Office of the Attorney General, Bangor, for appellee Department of Health and Human Services

South Paris District Court docket number PC-2021-26
FOR CLERK REFERENCE ONLY