MAINE SUPREME JUDICIAL COURT                              Reporter of Decisions
Decision:    2017 ME 72
Docket:      Kno-16-308
Argued:      March 2, 2017
Decided:     April 20, 2017

Panel:       SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, and HUMPHREY, JJ.

# IN RE HENRY B.

JABAR, J.

[¶1]    Henry B. appeals from an order of the Superior Court (Knox County, *Billings, J.*), acting as an intermediate appellate court, affirming the District Court's (Rockland, *Sparaco, J.*) order of involuntary commitment. Henry raises a novel question of law: whether individuals subject to involuntary commitment proceedings in Maine have the right to effective representation of counsel. Henry contends that they do. We agree, and adopt the *Strickland* standard for courts reviewing claims of ineffective assistance of counsel in involuntary commitment proceedings. *See generally Strickland v. Washington*, 466 U.S. 668 (1984). However, we disagree with Henry's contention that his counsel was ineffective, and therefore affirm the District Court's judgment ordering Henry's involuntary commitment, as well as the Superior Court's judgment affirming that judgment.

## I. BACKGROUND

[¶2]  On March 15, 2016, Henry B. was admitted to Pen Bay Medical Center (PBMC) pursuant to the "blue paper" procedures of 34-B M.R.S. § 3863(1)-(2) (2016).  On March 18, 2016, PBMC staff applied to involuntarily commit Henry pursuant to the "white paper" procedures of 34-B M.R.S. § 3863(5-A) (2016).  A commitment hearing was held in the District Court (Rockland, *Sparaco, J.*) on March 28, 2016, at which Henry was represented by appointed counsel.

[¶3]  Based on the testimony of the medical director of PBMC's Psychiatric and Addiction Recovery Center (PARC), an independent medical examiner, and two of Henry's sisters, the District Court concluded that the State had proved by clear and convincing evidence that Henry was mentally ill and that he had suffered an "acute psychotic episode, possibly related to a schizophrenic break."  Further, the court concluded that Henry posed a "serious risk" of harming himself or others, that there was not "an adequate community of resources for his care or treatment, that it would not be wise or safe to return him to his family's care," and that constant observation at PBMC would be "more structured and reliable than [treatment] he would be getting

at home." The court therefore ordered that Henry be subject to involuntary hospitalization for up to 120 days.

[¶4] Henry appealed to the Superior Court (Knox County, *Billings, J.*), and after a hearing on June 29, 2016, the Superior Court affirmed the District Court's judgment of involuntary commitment. *See* 34-B M.R.S. § 3864(11) (2016); M.R. Civ. P. 76(D). Henry timely appealed. *See* M.R. App. P. 2(B)(3).

## II. DISCUSSION

[¶5] Henry contends that he was not provided with effective assistance of counsel at the March 28 District Court hearing. He asserts that we should adopt the *Strickland* standard, s*ee Strickland*, 466 U.S. 668 (1984), when analyzing claims of ineffective assistance of counsel in involuntary commitment cases, and that by any standard, hearing counsel's assistance was prejudicially ineffective.

A. Effective Assistance Standard

[¶6] Maine law requires that an individual be represented by counsel at all stages of involuntary commitment proceedings. *See* 34-B M.R.S. § 3864(5)(D) (2016); *In re Penelope W.*, 2011 ME 58, ¶ 8, 19 A.3d 813. Because "where a state statute affords an individual subject to involuntary commitment with the right to counsel, the legislature could not have intended

that counsel could be prejudicially ineffective," *see In re Mental Health of K.G.F.*, 29 P.3d 485, 491 (Mont. 2001), we now hold that, at all stages of involuntary commitment proceedings, individuals subject to those proceedings are entitled to the effective assistance of counsel.

[¶7]   Having announced the right to effective counsel, we must also ensure that, when there is a claim of ineffective assistance, parties, counsel, and courts understand what processes to use and the standard to apply.  A majority of jurisdictions holding that the effective assistance of counsel applies to involuntary commitment proceedings have also held that the *Strickland* standard applies.  *See, e.g.*, *Pope v. Alston*, 537 So. 2d 953, 956-57 (Ala. Civ. App. 1988); *In re Carmody*, 653 N.E.2d 977, 984 (Ill. App. Ct. 1995); *In re Crane*, 704 N.W.2d 437, 439 (Iowa 2005); *In re Alleged Mental Illness of Cordie*, 372 N.W.2d 24, 28-29 (Minn. Ct. App. 1985); *State ex rel. H.W.*, 85 S.W.3d 348, 356 (Tex. App. 2002); *Jenkins v. Dir. of the Va. Ctr. for Behavioral Rehab.*, 624 S.E.2d 453, 460 (Va. 2006); *In re Det. of T.A.H.-L.*, 97 P.3d 767, 768 (Wash. Ct. App. 2004)*.*   In Maine, we recently applied a modified *Strickland* standard to hearings resulting in the termination of parental rights, stating that "the deprivation of parental rights is in many ways similar to the deprivation of liberty interests at stake in criminal cases."  *In re*

*M.P.*, 2015 ME 138, ¶¶ 1, 26, 126 A.3d 718. There, we further noted that the "*Strickland* standard is known to the bar and the bench, and . . . carries with it a developing body of case law, which will aid courts in the efficient and timely resolution of . . . claims." *Id.* ¶ 26.

[¶8] A similar rationale supports the application of *Strickland* to involuntary commitment cases: Maine law requires representation at all stages of the involuntary commitment proceedings, the liberty interests at stake are on par with those at stake in criminal cases, *Strickland* is a well-known and developing standard, and a "more intrusive post-trial inquiry could encourage the proliferation of ineffectiveness challenges, and possibly delay the permanency necessary to stabilize" a mentally ill individual's treatment in a safe environment. *Id.* (citation omitted) (quotation marks omitted).

[¶9] For these reasons, we declare that the *Strickland* standard applies to resolve claims of ineffective assistance of counsel in involuntary commitment cases in Maine, using the process we enunciated in *In re M.P.*, 2015 ME 138, ¶¶ 18-21, 126 A.3d 718. A direct appeal from an order of involuntary commitment may include a claim that the individual's attorney provided ineffective assistance of counsel "when the record is sufficiently well

6

developed to permit a fair evaluation" of the claim. *Id.* ¶ 19. If the record is insufficient to "illuminate the basis for the challenged acts or omissions of . . . counsel," the individual must promptly make a motion pursuant to M.R. Civ. P. 60(b)(6). *Id.* ¶ 20. If the motion is denied, "the trial court's findings will amplify the record and provide the necessary context should [the individual] decide to pursue an appeal of that decision along with the appeal of the underlying judgment" ordering his or her involuntary commitment. *Id.*

[¶10] To bring a claim of ineffective assistance of counsel following an involuntary commitment proceeding, whether by direct appeal or by Rule 60(b)(6) motion, the individual asserting the claim "must submit a signed and sworn affidavit stating, with specificity, the basis for the claim." *Id.* ¶ 21. That affidavit must be accompanied by affidavits from any individuals the claimant asserts should have been called as witnesses during the involuntary commitment hearing, as well as from any others whose evidence would buttress the claimant's assertions that counsel "was deficient and that the deficiency affected the fairness of the proceeding." *Id.*

B.     Application of *Strickland*

[¶11] Although at the time Henry appealed the District Court's decision we had not yet enunciated any process to evaluate ineffective assistance of

counsel claims following involuntary commitment hearings, we conclude that the Superior Court's consideration of Henry B.'s claim of ineffective assistance of counsel complied with the process we adopted in *In re M.P.* and now adopt for involuntary commitment proceedings, and will therefore address his assignments of error without remand.[1]

[¶12] *Strickland* provides that, in order to prove ineffective assistance of counsel, an individual must show (1) "that counsel's representation fell below an objective standard of reasonableness," and (2) that "errors of counsel . . . actually had an adverse effect on the defense." *Theriault v. State*, 2015 ME 137, ¶ 14, 125 A.3d 1163 (quotation marks omitted). The second prong requires an individual to demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. Henry B. contends in this appeal that his counsel failed to provide effective assistance of counsel pursuant to the *Strickland* standard in two respects: by failing to

---

[1] The Superior Court, in addressing Henry's ineffective assistance argument, did not specify whether it would apply *Strickland* or some other standard, but concluded that regardless of the standard applied, hearing counsel's conduct did not fall below that of a reasonably fallible attorney and that hearing counsel's performance did not affect the fundamental fairness of the proceeding. Despite our agreement with these conclusions, because the Superior Court acted in its appellate capacity, we review directly the District Court record and decision. *See Boyer v. Boyer*, 1999 ME 128, ¶ 6, 736 A.2d 273.

object to certain hearsay statements, and by failing to investigate Henry's previous medical treatments.

1.    Hearsay

[¶13]   Generally, out-of-court statements are not admissible to prove the truth of the matter asserted.  *See* M.R. Evid. 801, 802.  Expert opinions, however, may rely upon out-of-court statements and are not inadmissible for such reliance.  M.R. Evid. 703.  Psychological reports containing out-of-court statements are therefore admissible if the reports are considered by the court only "as expressions of the testifying experts' opinions."  *In re Soriah B.*, 2010 ME 130, ¶ 22, 8 A.3d 1256.

[¶14]   Here, during the District Court hearing, a PARC psychiatrist who worked personally with Henry following his admission to PBMC testified that Henry was brought to the hospital because "[a]pparently, [he] was found wandering on Route 1, running in traffic, and screaming that he wanted to die."  That psychiatrist then testified that Henry "had been brought in, also, on March 4th when he was found wandering outside without shoes and socks in 20-degree weather knocking on people's doors."  Finally, the psychiatrist stated that Henry "started to try and ingest Magic Markers, ingest checkers,

suck on hand sanitizer, and stick himself in the neck with a fork, and bashed his head through the wall."

[¶15]   Hearing counsel's failure to object to these alleged hearsay statements did not constitute ineffective assistance of counsel.   The statements provide the foundation of the psychiatrist's expert opinion and are admissible for that purpose.  *See id*; M.R. Evid. 703, 705*.*  Although the court reiterated in its findings some of these statements describing Henry's behaviors—namely that Henry ingested objects and professed that he wanted to die—the court relied upon the opinions of Henry's doctors as medical experts in reaching its legal conclusions.   Henry did not present his own expert testimony in rebuttal, nor did he present any evidence indicating that the facts contained in the hearsay statements were false.   Also, he has not demonstrated that the court would have reached different conclusions had hearing counsel in fact objected to the alleged hearsay.   Hearing counsel's failure to object to the testimony therefore does not "[fall] below an objective standard of reasonableness" or create a reasonable probability that, had counsel raised hearsay objections, the outcome would have been different. *See Strickland*, 466 U.S. at 694.

## 2. Previous Medical Treatments

[¶16]   Although Henry's counsel did not conduct an independent investigation into the incidents that occurred before Henry was admitted to PBMC, counsel did inquire on cross examination into the hospital's care of Henry and the intended treatment plan.  Counsel also probed whether Henry's medication regimen would be effective in alleviating his symptoms, to which the psychiatrist replied affirmatively.   Further, counsel inquired whether medications that the family alleged Henry had received several weeks prior to his admission to PBMC could have caused his symptoms, which the psychiatrist denied.   The psychiatrist concluded that Henry would benefit from commitment, as did a court-appointed independent medical examiner, citing similar reasons.

[¶17]   Because the District Court explicitly weighed the evidence and determined that the physician's opinions were more credible than the testimony of Henry's sisters, there is no reasonable probability that the outcome would have been different had Henry's counsel independently investigated his medical history.  *See Levesque v. State*, 664 A.2d 849, 852 (Me. 1995) (holding that where a defendant was not "deprived of an

otherwise available substantial ground of defense," counsel was effective pursuant to the *Strickland* standard).

C.     Sufficiency of the Evidence

[¶18]   In addition to raising ineffective assistance arguments, Henry contends that the evidence presented at the District Court hearing was insufficient to support the court's findings that Henry met the criteria for involuntary commitment.[2]   We review the court's findings of fact for clear error, *In re Marcial O.*, 1999 ME 64, ¶ 21, 728 A.2d 158, and "we will reverse a finding only if there is no competent evidence in the record to support it, if the factfinder clearly misapprehends the meaning of the evidence, or if the finding is so contrary to the credible evidence that it does not represent the truth and right of the case," *Guardianship of Hailey M.*, 2016 ME 80, ¶ 15, 140 A.3d 478 (citations omitted) (quotation marks omitted).   We note that it is the factfinder's prerogative to accept or reject portions or the entirety of any witness's testimony.     *Efstathiou v. Efstathiou*, 2009 ME 107, ¶ 12, 982 A.2d 339.

---

[2] Henry also claims on appeal that the court order involuntarily committing him was insufficient as a matter of law because it failed to recite a factual finding that the court was satisfied with the individual treatment plan established by Henry's medical team.  The record shows that the court did make this finding.  We therefore find this argument unpersuasive, and do not address it further.

12

[¶19]  A court must find the following facts by clear and convincing evidence to commit a person involuntarily to a psychiatric hospital: (1) that the person is mentally ill and poses a likelihood of serious harm, (2) that adequate community resources for the person's care are not available, (3) that inpatient hospitalization is the best available means of treatment, and (4) that it is satisfied with the individual treatment plan offered by the committing hospital.  34-B M.R.S. §§ 3864(6)(A), (7) (2016).

[¶20]  At the March 28 hearing, the psychiatrist testified that Henry was brought to the PBMC emergency room on March 4 after having been found "wandering outside without shoes and socks in 20-degree weather knocking on people's doors," and that Henry's family took him home, but Henry was again brought to PBMC by police on March 15 after he was found running in traffic on Route 1, screaming that he wanted to die.  The psychiatrist also testified that, after admission to PBMC, Henry tried to ingest magic markers, checkers, and hand sanitizer; stuck himself in the neck with a fork; bashed his head into the wall; told hospital workers that if he looked at people they would die; thought another patient was using mind control on him; and tried to electrocute himself.

[¶21]  The psychiatrist further testified that Henry was suffering acute psychotic episodes that could have been caused by a schizophrenic break or a psychotic disorder due to the ingestion of drugs prior to admission, but that Henry had screened negative for drug use.  Regardless of the differential diagnosis, the psychiatrist concluded that a treatment regimen at the hospital including Ativan and Risperidone would help Henry and noted that his demeanor had improved since admission.  The independent medical examiner, a clinical psychologist, expressed concerns that Henry would harm himself if released, and was supportive of the treatment plan proposed by the psychiatrist, including involuntary commitment.

[¶22]  Although Henry's sisters also testified, expressing their beliefs that Henry's symptoms were caused by the medications he had been provided by medical staff on March 4 and following an earlier incident in Massachusetts, and that the family did not want him taking any medications at all, the court noted that the sisters' opinions were "not founded in any sort of expert testimony."  However, the court explicitly weighed the doctors' testimony with that of the sisters, and made its findings based "on the most persuasive evidence, which is the medical testimony."  There is therefore competent evidence in the record supporting the court's conclusions that

Henry was mentally ill, that he posed a likelihood of serious harm, that adequate community resources for the care and treatment of his mental illness were not available, that inpatient hospitalization was the best available means for treating him, and that PBMC's treatment plan was satisfactory. *See* 34-B M.R.S. § 3864(6)(A).

The entry is:

Judgment affirmed.

---

Scott F. Hess, Esq. (orally), The Law Office of Scott F. Hess, LLC, Augusta, for appellant Henry B.

Janet T. Mills, Attorney General, and N. Paul Gauvreau, Asst. Atty. Gen. (orally), Office of the Attorney General, Augusta, for appellee Department of Health and Human Services

Knox Superior Court docket number AP-2016-10
FOR CLERK REFERENCE ONLY