MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2026 ME 43
Docket:        Cum-25-331
Submitted
  On Briefs:   March 18, 2026
Decided:       May 12, 2026

Panel:         MEAD, CONNORS, DOUGLAS, and LIPEZ, JJ., and HORTON, A.R.J.

ADULT GUARDIANSHIP AND CONSERVATORSHIP OF R.

LIPEZ, J.

[¶1]  R. appeals from a judgment of the Cumberland County Probate Court (*Aranson, J.*) denying his petition to terminate his existing guardianship and granting a petition of the Department of Health and Human Services to be appointed as his conservator.  R. contends that the court erred in declining to terminate his guardianship and in determining that appointment of a conservator was necessary.  He also claims that his attorney was ineffective.  Although we are unpersuaded by R.'s arguments and accordingly affirm the Probate Court's judgment, we expressly recognize for the first time that a person subject to guardianship or conservatorship proceedings has a right to the effective assistance of counsel.  We also take this opportunity to articulate a procedure by which an individual may challenge a guardianship or conservatorship order based on ineffective assistance of counsel.

## I. BACKGROUND

[¶2]  The court appointed the Department as R.'s guardian in September 2022.  Over two years later, in December 2024, R. filed a petition to terminate the guardianship.  Soon after, the Department filed a petition for appointment of a conservator for R., nominating itself to serve.[1]  On the Department's motion, the court consolidated the petitions for a single hearing, held over two days.  In a subsequent written order, the court made the following findings of fact, which are supported by competent evidence in the hearing record.  *See Guardianship of Patricia S.*, 2019 ME 23, ¶ 2, 202 A.3d 532.

[¶3]  R. has had multiple strokes and has been diagnosed with moderate vascular dementia.  His behavior and his performance on cognitive assessments are generally consistent with this diagnosis.

[¶4] R. resides at an assisted living facility.  He needs help with activities of daily living such as washing, dressing, and taking medications.  He also requires assistance with sending mail, voting via absentee ballot, and making grocery lists.

---

[1]  R.'s sister also filed a petition for appointment of a conservator, nominating herself to serve.  The court declined to appoint the sister upon concluding that she was not suitable for the role.  *See* 18-C M.R.S. § 5-702 (2026).  Because the sister is not a party to this appeal and because neither party challenges the court's choice between the two petitioners, we do not further discuss the sister's involvement in these proceedings.

[¶5]  R. generally does not have insight into his own limitations; he does not believe he has had a stroke.  He also has a poor memory.  He is, however, able to make and communicate decisions about his wants and needs and can participate in group activities.

[¶6]  R. is unhappy at the assisted living facility and wants to leave.  At times he has become frustrated and aggressive with staff at the facility, yelling at them and throwing objects, or refusing to take his prescribed medications.  He is unsteady on his feet and has fallen multiple times.  R. has been to the hospital five times since 2023: twice due to altered mental status, once because he could not calm down and was throwing things at staff, and twice because he had fallen.

[¶7]  R. is expected to inherit a substantial sum of money from his late mother's estate.  His cognitive limitations generally impair his ability to be realistic about finances and to recognize the possibility that he might be exploited.  For instance, R. has given money to a woman whom he has never met.  He believes that she is his girlfriend and that she has inherited thirty-five million dollars.  Although R. has no vehicle or driver's license, he wants to leave the assisted living facility and drive to Michigan, where he believes the woman lives.

4

[¶8]  Based on these facts, the court denied R.'s petition to terminate his guardianship and appointed the Department as his public conservator. R. timely appealed.  *See* M.R. App. P. 2B(c)(1).

## II.  DISCUSSION

[¶9]  Contrary to R.'s contentions, the evidence is sufficient to support the court's findings, by clear and convincing evidence, that termination of the guardianship is not appropriate, *see* 18-C M.R.S. §§ 5-301(1)(A), 5-319(1)(A), (4) (2026),[2] and that a basis for appointment of a conservator exists, *see* 18-C M.R.S. § 5-401(2) (2026).  *See Adult Guardianship & Conservatorship of T.*, 2022 ME 51, ¶ 13, 284 A.3d 83; *In re Child of Barni A.*, 2024 ME 16, ¶ 14, 314 A.3d 148.  We write, however, to address R.'s argument that he was denied the effective assistance of counsel during the guardianship and conservatorship proceedings.

[¶10]   R. argues that his attorney's performance was prejudicially deficient because the attorney failed to obtain an independent psychological evaluation of him before the hearing.  Although the Department concurs that R. had a right to the effective assistance of counsel, it contends that the

---

[2]  Title 18-C M.R.S. § 5-319 was amended in 2025.  *See* P.L. 2025, ch. 168, § 5 (effective Sep. 24, 2025) (codified at 18-C M.R.S. § 5-319).  The amendment does not affect the applicable standard for termination of a guardianship, *compare* 18-C M.R.S. § 5-319 (2025), *with* 18-C M.R.S. § 5-319 (2026), and we accordingly cite to the most recent version of the statute.

performance of R.'s attorney did not fall below an objective standard of reasonableness, and, in any case, did not affect the outcome.

[¶11]  We have not yet had the occasion to explicitly hold that adult respondents in guardianship or conservatorship proceedings or adults seeking termination of their guardianships or conservatorships have a right to the effective assistance of counsel, but we agree with the parties that such a right exists.  The Legislature grants adults subject to guardianship and conservatorship proceedings the right to court-appointed counsel.  *See* 18-C M.R.S. §§ 5-305(1), 5-319(7), 5-406(1),[3] 5-431(9) (2026).  Where, as here, "there is a right to counsel, there is a right to the effective assistance of counsel." *Stack v. State*, 492 A.2d 599, 601 (Me. 1985); *see also In re Henry B.*, 2017 ME 72, ¶ 6, 159 A.3d 824 (explaining that "where a state statute affords an individual . . . the right to counsel, the legislature could not have intended that counsel could be prejudicially ineffective" (quotation marks omitted)).  We therefore hold that individuals subject to guardianship or conservatorship proceedings are entitled to the effective assistance of counsel at all stages of

---

[3]  Title 18-C M.R.S. § 5-406 has been amended since the events at issue in this case, though not in any way that affects our analysis. *See* P.L. 2025, ch. 511, §§ 8-9 (effective July 13, 2026) (to be codified at 18-C M.R.S. § 5-406).

6

those proceedings and may seek to vindicate that right through claims that counsel's performance was prejudicially deficient.

## A. The *Strickland* Standard

[¶12]  We next set forth the standard by which the effectiveness of counsel is to be judged in this context.  The State recommends that we adopt the test used in criminal cases, which was first announced in *Strickland v. Washington*, 466 U.S. 668, 687-96 (1984).  To prevail on an ineffective-assistance claim in a criminal post-conviction proceeding, a petitioner must show both (1) deficient performance by counsel and (2) resulting prejudice.  *Id.* at 687.  R. argues that *Strickland* does not "strictly apply," although he does not propose an alternative standard.

[¶13]  In addition to mandating its use in criminal cases, *see, e.g.*, *Theriault v. State*, 2015 ME 137, ¶¶ 13-14, 125 A.3d 1163, we have applied the *Strickland* standard to assess counsel's performance in proceedings involving motions to revoke probation, *see Petgrave v. State*, 2019 ME 72, ¶¶ 7-8, 208 A.3d 371, petitions for child-protection and termination-of-parental-rights orders, *see, e.g.*, *In re M.P.*, 2015 ME 138, ¶¶ 22-26, 126 A.3d 718, *abrogated by*, *In re Children of Destiny H.*, 2024 ME 66, ¶¶ 38-41, 322 A.3d 1183, and applications for involuntary commitment, *see In re Henry B.*, 2017 ME 72, ¶¶ 7-9, 159 A.3d

824. We have favored use of this test because it "is known to the bar and the bench, and … carries with it a developing body of case law, which will aid courts in the efficient and timely resolution of such claims." *In re M.P.*, 2015 ME 138, ¶ 26, 126 A.3d 718. We have further recognized that the liberty interests at stake in child-protective and involuntary-commitment proceedings are on par with those at stake in criminal cases. *See id.*; *In re Henry B.*, 2017 ME 72, ¶¶ 7-8, 159 A.3d 824.

[¶14] The same rationale applies here. Like defendants in criminal matters, individuals subject to guardianship and conservatorship proceedings face substantial deprivations of liberty, and we see no reason to deviate from the familiar standard we use in similarly weighty contexts. *See In re Howes*, 471 A.2d 689, 691 (Me. 1984) ("The appointment of a guardian for an incapacitated person affects the fundamental personal liberty of [that individual]."). We therefore adopt the *Strickland* test as the metric to evaluate whether counsel provided effective representation in such proceedings. To succeed on his ineffective-assistance claim, R. "must show (1) that counsel's representation fell below an objective standard of reasonableness, and (2) that errors of counsel actually had an adverse effect on [the outcome of the case]." *In re Henry B.*, 2017 ME 72, ¶ 12, 159 A.3d 824 (alteration and quotation marks omitted).

## B.      Procedure for Raising an Ineffective-Assistance-of-Counsel Claim

[¶15]  We further determine that to assert an ineffective-assistance claim in a guardianship or conservatorship proceeding, parties must follow a process similar to that we have articulated for use in termination-of-parental-rights and involuntary-commitment cases, with some modifications.

[¶16]   First, an individual may raise an ineffective-assistance claim on direct appeal when "there are no new facts that the [individual] seeks to offer in support of the claim"—in other words, "when the record is sufficiently well developed to permit a fair evaluation of [the] claim." *In re M.P.*, 2015 ME 138, ¶ 19, 126 A.3d 718; *see also In re Henry B.*, 2017 ME 72, ¶ 9, 159 A.3d 824. However, when the basis for the claim is not apparent from the record, the individual must first file a motion for relief from judgment in the trial court pursuant to M.R. Civ. P. 60(b)(6).[4]  *See In re M.P.*, 2015 ME 138, ¶ 20, 126 A.3d 718; *In re Henry B.*, 2017 ME 72, ¶ 9, 159 A.3d 824.  As we have explained in other contexts, "if the [individual]'s Rule 60(b)(6) motion is denied, the trial court's findings will amplify the record and provide the necessary context should the [individual] decide to pursue an appeal of that decision along with

---

[4]  Rule 60(b) of the Maine Rules of Probate Procedure incorporates by reference Rule 60(b) of the Maine Rules of Civil Procedure.

the appeal of the underlying judgment." *In re M.P.*, 2015 ME 138, ¶ 20, 126 A.3d 718.

[¶17] Next, an individual asserting ineffective assistance of counsel in guardianship and conservatorship proceedings, whether by direct appeal or Rule 60(b)(6) motion, must submit at least one affidavit—the individual's own—"stating, with specificity, the basis for the claim." *See In re M.P.*, 2015 ME 138, ¶ 21, 126 A.3d 718 (requiring parents raising ineffective-assistance claims in termination-of-parental-rights proceedings to provide affidavits); *In re Henry B.*, 2017 ME 72, ¶ 10, 159 A.3d 824 (requiring the same for involuntary-commitment cases). When appended to a Rule 60(b)(6) motion, an affidavit helps the trial court to "determine what process is necessary to meaningfully assess a . . . claim, including whether to hold an evidentiary hearing at all." *In re Children of Destiny H.*, 2024 ME 66, ¶ 41, 322 A.3d 1183 (quotation marks omitted). When offered in support of a direct appeal, the affidavit serves a different purpose; it should not contain information extrinsic to the record but rather is "the means by which the [individual] states affirmatively that he or she is making the ineffectiveness claim."[5] *In re Aliyah*

---

[5] The affidavit should identify, with specificity, the facts in the record showing (1) that counsel's performance was deficient and (2) the resulting prejudice. *See In re Children of Brittany B.*, 2020 ME 1, ¶ 14 n.4, 223 A.3d 109.

*M.*, 2016 ME 106, ¶ 7, 144 A.3d 50. In either scenario, the affidavit "constitutes the foundation for an ineffectiveness claim." *Id.* ¶ 9. An individual may also provide additional affidavits from people whose statements will help the reviewing court to "meaningfully assess" the substance of the claim, although such supplemental affidavits are not required. *See In re Children of Destiny H.*, 2024 ME 66, ¶ 41, 322 A.3d 1183 (quotation marks omitted).[6]

[¶18] Lastly, we address the time in which one must assert an ineffective-assistance claim arising from guardianship or conservatorship proceedings. Claims brought by direct appeal, of course, are subject to the deadlines in the Maine Rules of Appellate Procedure. *See* M.R. App. P. 2B. For claims brought to the attention of the trial court by a Rule 60(b)(6) motion, we require a parent asserting ineffective assistance of counsel in a child-protective proceeding to file the motion within forty-two days of the expiration of the time to file a notice of appeal from the underlying jeopardy order or termination

---

[6] For involuntary-commitment cases, we require an individual raising ineffective assistance of counsel via Rule 60(b)(6) to provide affidavits "from any individuals the claimant asserts should have been called as witnesses during the involuntary commitment hearing, as well as from any others whose evidence would buttress the claimant's assertions that counsel was deficient and that the deficiency affected the fairness of the proceeding." *See In re Henry B.*, 2017 ME 72, ¶ 10, 159 A.3d 824 (quotation marks omitted). We have relaxed this requirement in child-protection cases, in part because we have observed that it may be difficult for a claimant to "compel the signing of an affidavit by every potentially relevant witness." *See In re Children of Destiny H.*, 2024 ME 66, ¶¶ 40-41, 322 A.3d 1183 (abrogating a component of the procedure announced in *In re M.P.*, 2015 ME 138, ¶¶ 20-21, 126 A.3d 718). We similarly see no reason to impose that more stringent requirement here.

judgment. *See In re Children of Destiny H.*, 2024 ME 66, ¶ 39, 322 A.3d 1183. This relatively short timeframe reflects children's need for permanence and finality. *See id.* ¶ 38. There is no equally pressing need for finality in proceedings involving adult guardianships and conservatorships, although we generally adhere to "a strong policy in favor of ending litigation and giving finality to court judgments." *Wells Fargo Bank, N.A. v. White*, 2015 ME 145, ¶ 11, 127 A.3d 538 (quotation marks omitted). Accordingly, a claimant who wishes to file a Rule 60(b)(6) motion asserting ineffective assistance of counsel in a guardianship or conservatorship proceeding must do so within one year of the expiration of the time to file a notice of appeal from the judgment establishing or declining to terminate the guardianship or conservatorship.[7]

## C.     R.'s Ineffective-Assistance-of-Counsel Claim

[¶19]  Turning back to this case, we do not fault R.—who did not file an affidavit supporting his ineffective-assistance claim—for failing to follow the procedure we have just announced. *See In re M.P.*, 2015 ME 138, ¶¶ 12, 28, 126 A.3d 718 ("permit[ting] the mother to file, and the District Court to act on, a [late] motion for relief from judgment" because we had not "previously opined

---

[7]  This is consistent with the general time limit imposed on criminal defendants asserting claims of ineffective assistance of counsel through a petition for post-conviction review. *See* 15 M.R.S. § 2128-B (2026).

on" the proper procedure to assert an ineffective-assistance claim in a termination-of-parental-rights proceeding). We also determine that we can assess R.'s claim on direct appeal because the basis for the claim is apparent from the record and R. does not rely on facts extrinsic to the record in making his argument.

[¶20] In keeping with our role as an appellate court, "our task is to determine whether [R.] has made a prima facie showing of ineffective assistance of counsel sufficient to justify a remand to the trial court for a hearing on the claim." *In re Children of Kacee S.*, 2021 ME 36, ¶ 21, 253 A.3d 1063; *see also In re Aliyah M.*, 2016 ME 106, ¶¶ 12-13, 144 A.3d 50 (explaining that "when a party makes a prima facie showing on any claim or defense, triable issues of fact must be determined in the trial court"). Applying the *Strickland* standard, we conclude that R.'s claim is unavailing.

[¶21] R. contends that his trial counsel should have provided the court with an independent psychological evaluation of him. We need not determine whether R. has generated a prima facie case that his attorney's failure to do so "fell below an objective standard of reasonableness,"[8] because even assuming

---

[8] Although R.'s trial counsel maintained at the hearing that she asked the Department to have R. evaluated, she never filed such a request with the court and did not appear to realize until midway through the second day of the hearing that no evaluation was performed. Instead, the Department

that it did, R. has not made a prima facie showing that counsel's actions adversely affected the outcome of the hearing. *See In re Henry B.*, 2017 ME 72, ¶ 12, 159 A.3d 824 (quotation marks omitted). There are simply no facts in the record or alleged in R.'s briefing to suggest that a psychological assessment would have shown anything other than that R. suffers from serious cognitive deficits that limit his ability to care for himself.[9] He therefore suffered no prejudice from the absence of such an assessment, and his ineffective-assistance-of-counsel claim must fail. *See id.*

### III. CONCLUSION

[¶22]    Individuals subject to guardianship or conservatorship proceedings have a right to the effective assistance of counsel at all stages of those proceedings. If the basis for a claim of ineffective assistance of counsel in a guardianship or conservatorship case is apparent from the record, then the person subject to guardianship or conservatorship may pursue the claim via an appeal from the judgment creating or declining to terminate the guardianship or conservatorship. If the record requires supplementation, however, then the

---

provided her with a PP-505 report, which is a summary description of an individual's physical and mental condition typically used in emergency guardianship or conservatorship proceedings.

  [9] The Department presented substantial testimony from R.'s regular medical providers regarding R.'s limitations.

person must move for relief from judgment pursuant to M.R. Civ. P. 60(b)(6) within one year after the time authorized for taking an appeal. In either case, the claim must be accompanied by one or more supporting affidavits. Courts addressing such claims must apply the *Strickland* standard to determine whether the individual is entitled to relief.

[¶23] In this case, we have reviewed R.'s ineffective-assistance claim—the basis of which is apparent from the record—and conclude that it lacks merit. We further conclude that the Probate Court did not err in denying R.'s petition to terminate his guardianship or in granting the Department's petition to be appointed as R.'s conservator. We accordingly affirm the Probate Court's judgment.

The entry is:

> Judgment affirmed.

---

Carl E. Woock, Esq., Steve Smith Trial Lawyers, Augusta, for appellant R.

Aaron M. Frey, Attorney General, and Cody M. P. Hopkins, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee Department of Health and Human Services

Cumberland County Probate Court docket number 2022-1044
FOR CLERK REFERENCE ONLY